## Iscovitz *v.* Filderman et al., Appellants.

Argued April 20, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*C. Brewster Rhoads,* with him *John F. Headly, Gabriel D. Weiss* and *Montgomery & McCracken,* for appellants.

*Joseph M. Smith,* with him *Clinton A. Sowers* and *Alexander Fried,* for appellee.

OPINION BY MR. JUSTICE DREW, May 15, 1939:

Plaintiff, a creditor of Jacob Filderman, filed a bill in equity to set aside as fraudulent the conveyance by Filderman in May, 1934, of four parcels of real estate to himself and his wife as tenants by the entireties. Filderman has since died and his personal representa-

tive was substituted on the record. The children of Filderman were also joined as defendants, since decedent and his wife had conveyed the land to them in March, 1935. The chancellor found that the conveyances were not made with an intent to defraud creditors and that they did not render Filderman insolvent, and accordingly dismissed the bill. Plaintiff's exceptions to this adjudication were argued before the court en banc which overruled the conclusions of the chancellor and found that Filderman had made the conveyances with intent to defraud the plaintiff. The court thereupon entered a decree declaring the conveyances to be void as against plaintiff's claim, and from it defendants have appealed.

The Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, Section 7, provides that "every conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Section 1 of the act defines a "creditor" to be a "person having any claim, whether matured or unmatured, . . . absolute, fixed, or contingent" and a "debt" as any "legal liability . . . liquidated or unliquidated, absolute, fixed, or contingent." There can be no doubt that plaintiff is entitled to the protection of this act, for when the conveyances in the instant case are considered in the light of the circumstances surrounding them, the only reasonable conclusion is that Filderman sought to fraudulently remove his property from the reach of his lawful creditors.

In 1915 Filderman had been appointed guardian of the plaintiff, who was then a minor. In November, 1933, several months after plaintiff had become of age, a citation was issued on Filderman to file his account as guardian, and on February 26, 1934, he complied by filing an account which showed that he had invested the entire estate of the ward in an illegal investment.

Accordingly, at the first hearing on the account held on May 7, 1934, plaintiff made a claim for surcharge against Filderman. On August 14, 1934, the Orphans' Court entered a decree surcharging the guardian in the sum of $3,500, and on appeal to this court that decree was affirmed (*Iscovitz's Estate*, 319 Pa. 277). It was during the pendency of this litigation that the conveyances complained of were made.

At the beginning of 1934 Filderman was a man of some wealth. His assets at that time consisted of the four pieces of property here in question, a retail dry goods business, an account in the Philadelphia Savings Fund Society in the amount of $2,000, and another bank account of over $2,000. Beginning shortly after the guardian's account was filed, when it was apparent that he would probably become liable to plaintiff for $3,500, Filderman gradually divested himself of all his real and personal property. In the latter part of April, 1934, he sold his dry goods business to a man who had been employed by him as a clerk in the store. Although the testimony shows that Filderman received $1,600 in cash at the time of the sale, the record is silent as to what became of the money. No corresponding deposit appears in the statements of Filderman's bank accounts which were all offered in evidence. In addition the purchaser's savings fund account which was alleged to be the source of the $1,600 was not produced to show that the amount had actually been withdrawn. The entire testimony relating to this transaction is vague and uncertain, and is consistent with a belief that no real value passed permanently to the vendor and that the sale was a part of a scheme to divest himself of his property for the purpose of defrauding his creditors.

On May 10 and 11, 1934, Filderman conveyed the four parcels of land here in question without consideration to a straw man who in turn conveyed the property to Filderman and his wife as tenants by the entireties. On May 12, 1934, he transferred the savings fund ac-

count to himself and his wife. The obvious purpose of these transactions was to place the land and the account beyond the reach of his individual creditors, for if the property were lawfully held by the husband and wife as tenants by the entireties it could not be reached by the creditors of the husband: *Gasner v. Pierce*, 286 Pa. 529; *Madden v. Gosztonyi S. & T. Co.*, 331 Pa. 476. Although the other bank account remained in Filderman's name, by the time the Orphans' Court had adjudicated plaintiff's claim, it had been reduced to approximately $175. The conveyance of the real estate by Filderman and his wife to their children does not affect plaintiff's rights. Section 9 of the Act of 1921, supra, permits the creditor to void the conveyance as against anyone except "a purchaser for fair consideration without knowledge of the fraud . . . or one who has derived title immediately or mediately from such a purchaser." The children were not purchasers for a fair consideration and hence do not come within the excepted class. Therefore the conveyance to them may be disregarded.

The chancellor had limited himself to the narrow inquiry as to the state of Filderman's finances on the date of the conveyance, but the court en banc properly examined the entire course of conduct of the grantor and concluded that the evidence showed an intention to defraud the plaintiff. That such is true is too plain for argument. Section 7 of the Act of 1921, supra, requires that the intent to defraud must be actual as distinguished from intent presumed in law. Where the transaction is between husband and wife actual intent does appear where it is shown that there was a deed given for a nominal consideration. This is but a presumption of fact and places on the wife the burden of showing the fairness of the transaction: *Queen-Favorite B. & L. Assn. v. Burstein*, 310 Pa. 219. Since family collusion by a debtor is so easy to execute and so difficult to prove, the evidence to sustain the claim of the wife in such

cases must be clear and satisfactory: *American Trust Co. v. Kaufman,* 276 Pa. 35; *Queen-Favorite B. & L. Assn. v. Burstein,* supra.

Each of the transactions in the instant case viewed alone might appear to be an ordinary and proper one, but when considered together the only reasonable conclusion is that Filderman initiated this series of transfers of all his property for the sole purpose of preventing plaintiff from securing payment of his claim. That it was proper for the court below to examine the surrounding circumstances and subsequent events in ascertaining Filderman's intention cannot be doubted. In the usual case involving fraud, the intent cannot be shown by direct testimony, for it would be unusual for one about to defraud his creditors to proclaim his purpose. Hence it must necessarily be proved by facts and circumstances which taken together show the existence of fraud: *Montgomery Web Co. v. Dienelt,* 133 Pa. 585; *Small v. Gilbert,* 56 F. (2d) 616. Although the intent must exist at the time the transfer was made, it may be shown by conduct subsequent to the execution of the conveyance of such a nature as to show fraud in its inception: *Grove v. Kase,* 195 Pa. 325. As soon as the legality of the investment made by Filderman as guardian was questioned, he entered into the series of transactions that in a few months stripped him of all his assets. First he sold his business under circumstances pointing to a mere colorable sale for the sole purpose of placing title in a former clerk. Immediately following this he attempted to place all his real estate and his savings account beyond the reach of his creditors. Finally he withdrew from his bank account large sums of money so as to leave practically nothing which could be reached by plaintiff. The conveyances were merely part of a series of dealings by which Filderman ultimately rendered himself incapable of paying the amount of the surcharge at a time when he was well aware of the probability of its being imposed. In the face of all

this we must conclude that the court below correctly ruled that the conveyances were made with the intention of defrauding the plaintiff.

Decree affirmed, costs to be paid by appellants.