Stanko *v.* Males, Appellant.

Argued March 27, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

282

*John E. Costello,* for appellants.

*Samuel J. Feigus,* with him *Joseph R. Rygiel,* for appellee.

OPINION BY MR. JUSTICE COHEN, ·October 10, 1957:

Mary and John Stanko were tenants by the entireties of a $38,000 property located in Fayette County. On May 31, 1951, Mary Stanko delivered to the defendants, a daughter and son-in-law, a deed to this realty purportedly executed by herself and her husband. The defendants paid Mary Stanko $2,000 in cash, and assumed the $20,949.50 mortgage on the real estate. They then entered into possession of the premises, and occupied a five-room apartment as their residence. During the following year the defendants collected the rents from the property, and maintained and improved the premises.[1]

---

[1] The total expenses incurred by the defendants on account of the property from the date of delivery of the deed until the time of the original hearing on October 26, 1953, was as follows: $2,000 consideration for the conveyance; $4,149.50 on the principal of the mortgage; $2,654.01 interest; $881.60 taxes; $168 insurance; $1,233.85 maintenance; $415.47 improvements. The total income from the property during the same period was: $1,160 fair rental value of their apartment; $6,272.90 rent; therefore, the defendants' expenditures on the property amounted to $4,069.53 more than the income value thereof.

In February, 1953, John Stanko filed a bill in equity in the Court of Common Pleas of Fayette County to set aside the deed, averring that he did not sign the deed nor authorize anyone to sign for him. The case was originally heard by the late Judge COTTOM, who died before rendering a decision. By agreement of the parties an adjudication by Judge CARR was made upon a transcript of the testimony and the original exhibits. After a rehearing at which the testimony of a handwriting expert was received in evidence, the chancellor concluded that the plaintiff never signed the deed nor authorized his wife to sign it in his behalf, but on the contrary immediately repudiated the deed when he learned of its existence in the spring of 1952. The defendants' exceptions to these findings were dismissed by the court en banc, and a judgment ordering the cancellation of the deed was entered. From the final decree the defendants appeal maintaining that the chancellor's findings were unsupported by the evidence, and that the decree failed to provide for recovery of the expenses incurred by the defendants in the acquisition, maintenance and improvement of the property.

The chancellor in rendering his adjudication did not see the witnesses, (excepting the handwriting expert), therefore his findings of fact are not entitled to the same weight as the verdict of a jury; this Court is equally competent to form an opinion as to the facts from the evidence appearing in the record. *Wilwohl's Petition,* 311 Pa. 152, 154, 166 Atl. 654 (1933).

However, nothing in the record impels us to disagree with the determination of the chancellor that the plaintiff had neither executed the deed, authorized his wife to sign it for him, nor had such notice of the transaction as would estop him from asserting his rights.

The plaintiff testified that the signature on the deed was not his own and that he had not consented that his wife act in his behalf. Indeed, he asserted that he had no knowledge whatsoever of the transaction prior to his discovery of the conveyance in the spring of 1952, at which time he contacted the defendants and an attorney in order to assert his claim to the property. His testimony was corroborated in part by the handwriting expert who testified that the signature "John Stanko" appearing on the deed was not genuine. Further, Stanko's position was substantiated by his wife, Mary, who admitted signing her husband's name to the deed without his knowledge and consent in order to obtain funds to send their incurably ill son to Arizona.

Defendants attempted to prove Stanko's knowledge, or at least his notice of the transaction, by evidence showing that after the date of delivery of the deed he permitted his son-in-law to perform all of the routine maintenance duties which previously the plaintiff had undertaken. But these duties were not extensive or burdensome, and plaintiff testified that his son-in-law, then living on the premises, had volunteered to relieve his father-in-law of them. Hence, Stanko's withdrawal raises no inference of knowledge of the transfer. Neither does the failure of the plaintiff to object to the subsequent management of the property by the defendants indicate such knowledge. John Stanko is illiterate except to the extent of being able to write his name. His wife is a capable and experienced businesswoman to whom plaintiff has largely entrusted the management of their property and financial affairs. In view of this circumstance, it is quite reasonable to infer that the plaintiff never became apprised of the fact that his daughter and son-in-law had taken over control of the property.

On the other hand, despite the entrusting of his financial affairs to his wife, the record is bare of evidence indicating that the plaintiff had ever authorized her to convey or encumber any of their real estate without his specific knowledge and consent, or without his joinder in signing and acknowledging the deed.

What this Court said in the case of *Thees v. Prudential Insurance Co.*, 325 Pa. 465, 467-68, 190 Atl. 895 (1937) applies with particular force to the present situation:

"Appellant[s are] innocent in the transaction and [are] in an unfortunate position; [they have] advanced money to the holder of record title of real estate, relying upon the apparent accuracy of signatures, acknowledgment and record and upon representations made. . . . But as an innocent third party [their] equity does not rise higher, nor as high, as that of [John Stanko], who was in complete ignorance of the fraud. . . .

"The fact that the wife knew of the deed . . . would not affect the husband with notice nor would her participation in the conveyance of the property injure her husband's right. It scarcely needs citation of authority to show that an estate by entireties is incapable of dissolution by one of the tenants without the consent of the other, and neither spouse alone may alienate his or her interest in the property during the lifetime of the other. [Citations omitted]. There is no presumption flowing from marital relationship that one spouse in conveying the estate acted as agent for the other. To so hold would destroy the effect of the rule.

". . . Her participation in the fraud made her acts and interest hostile to her husband and not in favor of his interest which is a duty of every agent. . . .

"No collusion between husband and wife to obtain funds . . . can be found in the record; on the contrary [Stanko] was obviously the innocent victim of delib-

erate . . . fraud. Under the evidence presented estoppel cannot be invoked in a proceeding such as this. There is nothing in law or in reason that would require one to examine the record to discover an instrument he never executed, knew nothing of nor had any occasion to know anything about. A forged instrument being of record for a long period of time does not estop the injured party from asserting the fraud and securing its cancellation. . . ."

However, there is no evidence to indicate that either of the defendants were guilty of bad faith or fraud. It is a well settled doctrine of equity that when a bona fide possessor of property makes improvements upon it, in good faith and under an honest belief of ownership, and the real owner for any reason seeks equitable relief, the court, applying the familiar principle that he who seeks equity must do equity, will compel him to pay for the improvements to the extent that they have enhanced the value of the land. *Putman v. Tyler,* 117 Pa. 570, 588, 12 Atl. 43 (1888) ; 4 Pomeroy, Equity Jurisprudence, §1241 (5th ed. Symons, 1941) ; Restatement, Restitution, §42 (1) (1937) ; Annotation, 104 A.L.R. 577, 580-584 (1936). See *Gray v. Leibert,* 357 Pa. 130, 137-38, 53 A. 2d 132 (1947). So also, the owner is required to make compensation for payments made to discharge claims against the property. *Haverford Loan & Building Association of Philadelphia v. Fire Association of Philadelphia,* 180 Pa. 522, 37 Atl. 179 (1897) ; *Iron City Tool Works v. Long,* 4 Sadler 57, 7 Atl. 82 (1886) ; Restatement, supra, §43(1).

Under the circumstances of this case justice requires that the decree be modified so as to include therein directions that the plaintiff pay the defendants an amount equal to the tax and mortgage expenditures made by them, plus the expenditures made for the improvement and necessary maintenance and insurance of plaintiff's

property to the extent that the property was benefited thereby, less the value of the use made of the property and the rents received therefrom by the defendants.[2]

Decree modified and as modified affirmed. Costs of this appeal to be shared equally by plaintiff and defendants.

---

[2] Defendants are relegated to an action against Mary Stanko in order to recover the $2,000 paid for the transfer of the property.