## Butler County, Appellant, *v.* Brocker.

344

Argued September 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Lee C. McCandless,* County Solicitor, for appellant.

*John J. Klein,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, January 24, 1974:

In these appeals Butler County seeks to set aside a conveyance of real property, located in Franklin Township, Butler County, by Dr. Robert J. Brocker to himself and his second wife as tenants by the entireties. It

is alleged that this conveyance is a fraudulent conveyance under the Uniform Fraudulent Conveyance Act.[1]

The facts set forth in *Brocker v. Brocker,* 429 Pa. 513, 241 A. 2d 336 (1968), *cert. denied,* 393 U.S. 513 (1969), are preliminary to this proceeding. Dr. Brocker and his first wife were divorced on October 15, 1964. The order granting the divorce incorporated a written agreement of the parties providing custody of their six children with the mother. On June 18, 1965, this order was amended by agreement of the parties, to provide the father with custody of the children during the summer vacation periods, commencing on the fifth day after the end of the spring school term and ending five days prior to the beginning of the fall term. On August 30, 1966, the mother filed a petition with the Butler County Court praying that Dr. Brocker be held in contempt for his failure to return the children to her on August 25, 1966, pursuant to the amended custody order.[2] When Dr. Brocker failed to show cause why he should not be held in contempt, the court entered a contempt order which assessed a $25,000 penalty against him payable to the County.[3] On appeal, we affirmed the propriety of that penalty.[4] It is by virtue of the money

---

[1] Act of May 21, 1921, P. L. 1045, §§1-13, 39 P.S. §§351-363.

[2] This petition was filed at a hearing called to consider another petition filed by the mother on August 12, 1966, praying (1) that her former husband be held in contempt for failure to pay support for their children as required by an order of the Butler County Court and (2) that support payments be increased. At the conclusion of the hearing, support payments for each child were increased.

[3] The September 6, 1966, order, which was entered only after Dr. Brocker failed to appear at the hearing to show cause, provided that the penalty be remitted upon compliance with the court order within five days. The order was reduced to judgment and filed on January 18, 1967.

[4] *Brocker v. Brocker,* 429 Pa. 513, 241 A. 2d 336 (1968), *cert. denied,* 393 U.S. 513 (1969).

judgment which resulted from the contempt order that Butler County has become involved in the present case.

Dr. Brocker married his present wife, in Ohio, two weeks after divorcing his first wife. They have resided there since that time.[5] On April 14, 1965, five and one-half months after he was remarried, Dr. Brocker purchased in his name alone 14.165 acres of land in Franklin Township, Butler County. There were no further conveyances of this property until August 22, 1966, when he conveyed this property to himself and his wife, thereby creating an estate by the entireties. This conveyance was for nominal consideration. Arguing that this conveyance was part of a plan designed to leave Dr. Brocker's assets in Pennsylvania insufficient to pay the anticipated penalty for the contempt which followed shortly thereafter, Butler County brought this action in equity, based on the Uniform Fraudulent Conveyance Act, to set aside the conveyance.[6] The Court of Common Pleas of Butler County dismissed the complaint and exceptions were dismissed by the court en banc.

The lower court dismissed the complaint on the grounds that because the County was not a judgment creditor at the time of the conveyance Section 354 of the Fraudulent Conveyance Act was not applicable[7] and that because the County failed in its burden to show that actual fraud existed at the time of the conveyance,

---

[5] Dr. Brocker had been living in Ohio since 1962, although he did maintain a part-time practice in Butler County until early 1966.

[6] A suit initiated by Butler County in Ohio to collect the judgment resulted in the determination by the Ohio courts that the contempt was penal in nature and would not be enforced by the State of Ohio.

[7] Section 354 states: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."

it could not bring the County within the purview of Section 357.

We agree with the inapplicability of Section 354. While that section creates a presumption of fraud, it applies only to creditors existing at the time of the conveyance. Section 351 of the Act defines creditors as "person[s] having any claim, whether matured or unmatured, liquidated or unliquidated, absolute fixed or contingent." Since the questioned conveyance antedates the contempt order here, Butler County was not a creditor existing at the time of the conveyance and has been characterized properly as a subsequent creditor.

We do believe, however, that Section 357 is applicable and, accordingly, we reverse. Section 357 states: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors is fraudulent as to both present and future creditors." Butler County is a future creditor of Dr. Brocker by means of the money judgment assessed against him shortly after the conveyance.

Under this section, Dr. Brocker does not have to render himself insolvent or absolutely execution proof in order to establish a fraudulent conveyance. *Sheffit v. Koff,* 175 Pa. Superior Ct. 37, 100 A. 2d 393 (1954). Butler County need only show an intent to hinder, delay or defraud on the part of Dr. Brocker to make the conveyance fraudulent. Our cases have established the principle "that as between husband and wife fraud is presumptively present when the conveyance is for a nominal consideration and is challenged by creditors" and this rule of law has been held to apply to conveyances covered by Section 357. *Miami National Bank v. Willens,* 410 Pa. 505, 507, 190 A. 2d 438, 439 (1963). *See also Smith v. Arrell,* 388 Pa. 117, 130 A. 2d 167 (1957); *Iscovitz v. Filderman,* 334 Pa. 585, 6 A. 2d 270 (1939); and *Queen-Favorite B. & L. Assn. v. Burstein,* 310 Pa.

219, 165 A. 13 (1933). This presumption is but a presumption of fact and places on the transferee the burden of showing the fairness of the conveyance. *Iscovitz v. Filderman, supra,* and *Queen-Favorite B. & L. Assn. v. Burstein, supra.* "Since family collusion by a debtor is so easy to execute and so difficult to prove, the evidence to sustain . . . [appellees'] claim . . . must be clear and satisfactory." *Iscovitz v. Filderman,* 334 Pa. at 589-90, 6 A. 2d at 272. *See also Queen-Favorite B. & L. Assn. v. Burstein, supra,* and *American Trust Co. v. Kaufman,* 276 Pa. 35, 119 A. 749 (1923).

The court below failed to consider this burden to rebut the presumption of fraud. The only reason given by appellees was that the conveyance was made for tax probate purposes; no further explanation was given. We believe that this self-serving statement alone does not constitute "clear and satisfactory" evidence of an untainted conveyance. This belief is supported by surrounding circumstances which, absent the presumption and standing alone, are enough to find an intent on the part of the appellees to hinder Butler County in its efforts to collect the money judgment.[8] Dr. Brocker was aware of the possibility of fines being imposed by Butler County since he had been threatened on four prior occasions with contempt and fines for failure to follow the custody order. On August 25, 1966, just one day before he kept custody of the children in violation of the amended custody order, Dr. Brocker instituted pro-

---

[8] This Court is not bound by the findings of fact of the trial court where no witnesses appeared before the trial court and its decision was based on facts averred in written pleadings. *Stanko v. Males,* 390 Pa. 281, 135 A. 2d 392 (1957) ; *Collins v. Kephart,* 271 Pa. 428, 117 A. 2d 440 (1921) ; *Contakos v. Contakos,* 204 Pa. Superior Ct. 445, 205 A. 2d 619 (1964). The instant case was decided on the basis of the pleadings and a deposition taken of Dr. Brocker. Where the trial judge does not see witnesses, he is in no better position to form an opinion from the evidence than we are. *Wilwohl's Petition,* 311 Pa. 352, 166 A. 654 (1933).

ceedings in Ohio to obtain permanent custody of the children.[9] This evidence indicates that he was actively seeking permanent custody of his children. Finally, while the initial purchase of this property was made five and one-half months after Dr. Brocker's remarriage, he purchased the property in his name alone. He then waited sixteen months to create the estate by the entireties. We are convinced that the conveyance was not merely coincidental to his contempt of the amended custody order. The facts support our belief that this conveyance was fraudulent under Section 357 of the Act.

Decree reversed. Appellees pay costs.

———

[9] The Ohio Court did grant permanent custody of the children to Dr. Brocker on April 24, 1969.

———

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. Section 357 of the Uniform Fraudulent Conveyance Act is not applicable to this case. The appellee conveyed an interest in property to his wife on August 22, 1966. On that date the petition asking that the appellee be held in contempt *had not yet been filed*. It was not filed until eight days later on August 30, 1966. Under such circumstances, the appellee's conveyance could not have been with *actual intent* to defraud a *future creditor*. At the time of the conveyance in this case, it was pure speculation as to whether a petition for contempt would be filed—it was pure speculation whether the appellee would be adjudged guilty of criminal contempt—it was pure speculation that a criminal penalty would be imposed in what was and had been a custody dispute between parents—it was pure speculation that the criminal penalty would be the exorbitant sum of $25,000. Under such circumstances there was no conveyance with actual intent to defraud a future creditor, even assuming that a legal liability for a crim-

inal penalty is covered by the Uniform Fraudulent Conveyance Act and even assuming that such a criminal penalty can be imposed without a jury trial.

The decree of the lower court should be affirmed.