UNITED STATES of America, Plaintiff,

v.

Herman KLAYMAN and Carolyn
Klayman, Defendants.

Civ. A. No. 88–5349.

United States District Court,
E.D. Pennsylvania.

· May 15, 1990.

Edward J. Snyder and Stephen Carlton, Attys., Tax Div., U.S. Department of Justice, Washington, D.C., for the U.S.

Donald Brown, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendants.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

This two-count civil action was filed by the United States of America on July 11, 1988. The United States sought in Count I to reduce to judgment a tax assessment against Herman Klayman. In Count II, the United States sought to set aside as a fraudulent conveyance the sale of real property from Herman Klayman to his wife Carolyn Klayman, and to obtain a judgment in the amount of the fraudulently conveyed property.

A non-jury trial was held as to Count II on February 5, 1990 and after hearing testimony, we ordered counsel to submit briefs in lieu of a final argument.[1] Upon consideration of the testimony and the respective briefs, the court enters the following findings of facts and conclusions of law.

## FINDINGS OF FACT

1. On August 29, 1980, Herman Klayman obtained title to a condominium located at 1420 Locust Street, Philadelphia, Pennsylvania. Record ownership was listed solely in the name of Herman Klayman.

2. On December 31, 1980, the Internal Revenue Service issued statutory notices of deficiency for federal income taxes alleged to be due and owing from Herman Klayman for the taxable years 1972 through 1977.

3. On March 30, 1981, Herman Klayman contested the alleged deficiencies by filing a petition for redetermination with the United States Tax Court.

4. On June 5, 1981, Herman Klayman married his current wife, Carolyn Klayman.

5. On May 3, 1982, Herman Klayman executed a deed of conveyance transferring the Locust Street condominium from himself as sole owner to himself and his wife, as tenants of the entirety.

---

**1.** The Court entered a partial summary judgment on Count I on July 27, 1989.

6. At the time of the May 3, 1982 conveyance, both Herman Klayman and Carolyn Klayman ("the Klaymans") were aware that Herman Klayman had been engaged in litigation with the Internal Revenue Service for several different tax years.

7. The May 3, 1982 deed was not recorded until August 9, 1982. The deed effecting this conveyance indicated that the consideration paid by Carolyn Klayman was $1.00.

8. On August 20, 1984, the Tax Court entered a stipulated decision in which Herman Klayman agreed to income tax deficiencies in the following amounts:

1972........$39,820.00
1973........$37,499.00
1974........$167,317.00
1976........$32,287.00
1977........$26,043.00

9. On September 28, 1984 the Internal Revenue Service made assessments against the Klaymans for the unpaid deficiencies, plus statutory additions.

10. On September 28, 1984 the Klaymans mortgaged the Locust Street condominium for $100,000 with the Industrial Valley Bank.

11. After the mortgage was executed, notices of federal tax liens against Herman Klayman were filed.

12. An additional assessment was made against the Klaymans on February 18, 1985, for unpaid federal income tax for the year 1978, in the amount of $2,392.00, plus statutory additions.

13. On December 27, 1985 the Klaymans sold the Locust Street condominium to Bruce Levy and Charles Howard Levy for $126,500.

14. The Klaymans made a profit of $8,259.27 from this sale.

15. Before and after the May 3, 1982 conveyance, Herman Klayman continued residing at the Locust Street condominium until it was sold in December 1985.

16. As of April 7, 1989 Herman Klayman was indebted to the United States in the amount of $1,694,508.25, for the taxes described above.

## DISCUSSION

We will deal briefly with one issue before going on to our Conclusions of Law. The major subject of testimony at the trial conducted on February 5, 1990 was the question of whether the May 3 conveyance was fraudulent and void for lack of fair consideration between husband and wife, pursuant to Pennsylvania's Fraudulent Conveyance Act, 39 Pa.Stat.Ann. § 351 *et seq.* (Purdon 1989).

Section 357 of the Fraudulent Conveyance Act states that "every conveyance made ... with actual intent, as distinguished from intent presumed in the law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." The Pennsylvania Supreme Court ruled in *Iscovitz v. Filderman,* 334 Pa. 585, 589, 6 A.2d 270 (1939) that when a transaction has occurred between a husband and a wife in which a deed was given for nominal consideration, "actual intent" is present. The burden then shifts to the wife to show the "fairness of the transaction." *Id.* Family collusion is "so easy to execute and so difficult to prove, the evidence to sustain the claim of the wife in such cases must be clear and satisfactory." *Id; see, e.g., Heritage Bank, N.A. v. SMI Industries, Inc.,* No. 78–2698, slip op., 1985 WL 3408 (E.D.Pa. Nov. 1, 1985) (Fullam, J.).

The belatedly-recorded deed for the May 3 conveyance states that Carolyn Klayman paid $1.00 for her interest in the condominium. The Klaymans attempt to establish the fairness of this transaction by pointing out a typewritten insert to the deed stating the conveyance was made for "other good and valuable consideration." This, they contend, was provided by Carolyn Klayman's execution of a guaranty agreement making her jointly and severally liable to the Industrial Valley Bank for a $1,300,000 loan the Bank was advancing to Herman Klayman's business, Porkland Industries.

Herman Klayman stated he received a benefit from this in that having received this loan, his business had sufficient capital to continue for some time and he continued to draw a salary. The alternative, he stated, was that Porkland Industries' line of

credit would have been withdrawn, and "without a line of credit in the pork industry it is impossible to exist." N.T. Feb. 5, 1990, p. 28. This may be, but Herman Klayman also stated that despite the Bank's insistence on his wife's signature on the loan to Porkland Industries, and despite her independent financial position as a former bank executive, she did not have the resources to cover a $1.3 million loan, nor did the Industrial Valley Bank conduct what the United States called a "serious assets investigation" to ascertain whether Carolyn Klayman could meet such an obligation if she had to. N.T. Feb. 5, 1990, pp. 31–33; 46. These facts, and the fact that Carolyn Klayman admitted to being "generally familiar" with her husband's tax problems at the time of the transaction lead the court to conclude that the Klaymans have failed to provide clear and satisfactory evidence that the May 3 conveyance was for a fair and valuable consideration, and accordingly, the court concludes the May 3 conveyance was made with the intention to hinder, delay, and defraud Herman Klayman's creditors in general, and the United States in particular.[2]

## CONCLUSIONS OF LAW

1. The United States is deemed a creditor of a taxpayer from the date when the obligation to pay income tax accrues. *United States v. St. Mary,* 334 F.Supp. 799, 803 (E.D.Pa.1971); *see also Coca–Cola Bottling Co. of Tucson v. Commissioner,* 37 T.C. 1006 (1962), aff'd 334 F.2d 875 (9th Cir.1964); *United States v. 58th Street Plaza Theatre, Inc.,* 287 F.Supp. 475 (S.D. N.Y.1968).

2. Herman Klayman was indebted to the United States for unpaid federal income taxes due for the years 1973, 1974, 1976, 1977, and 1978 when he conveyed a one half interest in the Locust Street condominium to his wife, Carolyn Klayman.

3. The United States was therefore a creditor of Herman Klayman at the time of the conveyance of the Locust Street condominium on May 3, 1982, and therefore the Locust Street condominium was an asset

out of which the tax liability owed to the United States by Herman Klayman could have been satisfied.

4. Pursuant to Section 357 of the Pennsylvania Uniform Fraudulent Conveyance Act, 39 Pa.Stat.Ann. § 357 (Purdon 1989), every conveyance made and every obligation incurred with actual intent to hinder, delay, or defraud creditors is fraudulent as to creditors. *E.g., United States v. Gleneagles Investment Co., Inc.,* 565 F.Supp. 556, 573 (M.D.Pa.1983).

5. Under Pennsylvania law, a conveyance from husband to wife for nominal consideration is presumed fraudulent on its face as to creditors, and no further evidence of actual fraud is required. *Queen–Favorite B. & L. Assoc. v. Burstein,* 310 Pa. 219, 165 A. 13 (1933); *Iscovitz v. Filderman,* 334 Pa. 585, 6 A.2d 270 (1939); *Smith v. Arell,* 388 Pa. 117, 130 A.2d 167 (1957).

6. When a transfer from husband to wife for apparently nominal consideration has been alleged, the burden is on the wife to show by clear and satisfactory proof that the conveyance was fair. *Iscovitz, supra,* 334 Pa. at 589, 6 A.2d 270; *see also, County of Butler v. Brocker,* 455 Pa. 343, 314 A.2d 265 (1974).

7. A guaranty agreement signed by Carolyn Klayman on May 3, 1982 purported to guarantee loans made by the Industrial Valley Bank to Porkland Industries, Inc., and Porkland Subsidiary, Inc. t/a Porkland, Inc.

8. Carolyn Klayman has not met her burden of demonstrating by clear and satisfactory evidence that fair consideration was paid for the conveyance.

9. At the time of the conveyance, Carolyn Klayman knew of her husband's pending tax litigation with the Internal Revenue Service.

10. The following facts are indicative of fraud in this case: inadequate consideration; close relationship between transferor and transferee; pendency of litigation; the transferor's reservation of a benefit in the

---

**2.** Having reached this decision, we will not rule on the separate question of whether the defendants' failure to record the May 3 conveyance

with the 90 days mandated by the Pennsylvania Recording Act, 21 Pa.Stat.Ann. § 444 (Purdon 1989), rendered it void as to the United States.

"transferred" property; and the transferor's retention of possession.

11. The May 3, 1982 conveyance was fraudulent and void for lack of fair consideration between husband and wife, and was undertaken with the intent to hinder and prevent the United States from satisfying its claim against Herman Klayman.

12. Accordingly, the United States is entitled to have the $100,000 the Klaymans received from the 1984 mortgage of the condominium, and the $8,259.27 profit the Klaymans received from the 1985 sale of the condominium, applied towards satisfaction of Herman Klayman's $1,694,508.25 debt to the United States.