**CITIZENS BANK OF ELIZABETHTON, TENNESSEE, Plaintiff,**

v.

**KEN–PENN AMUSEMENT, INC., et al., Defendants.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Edythe SANDERS, et al., Defendants.**

**Nos. 89–646, 89–1623.**

United States District Court, W.D. Pennsylvania.

July 31, 1992.

See also 785 F.Supp. 528.

John R. Dingess, Kirkpatrick & Lockhart, Pittsburgh, Pa., for plaintiff.

K. Lawrence Kemp, Kemp & Kemp, New Kensington, Pa., for Ralph and Olga Sanders, Ken–Penn Amusement.

Mary E. Bower, Pittsburgh, Pa., for Edythe Sanders.

Harry S. Cohen, Pittsburgh, Pa., for Citizens Bank.

## MEMORANDUM OPINION

LEWIS, District Judge.

The Federal Deposit Insurance Corporation (the "FDIC") has filed a motion for summary judgment asserting that there are no genuinely disputed material facts preventing a dispositive decision by this court on the existing record, and that it is entitled to judgment in its favor as a matter of law.

Edythe Sanders ("Sanders") had previously filed a motion to dismiss, which she now asks the court to treat as a cross-motion for summary judgment. Sanders asserts that the FDIC's claim is barred by the applicable statute of limitations. Further, Sanders argues that no genuine disputes concerning material facts exist that would prevent judgment in her favor.

For the reasons discussed below, this court will deny Sanders' cross-motion for summary judgment and will grant the FDIC's motion for summary judgment.

## FACTS

The FDIC filed Civil Action No. 89–1623 on August 3, 1989, seeking declaratory relief against Sanders, Ken–Penn Amusements, Inc., Nova Expositions, Inc. and Citizens Bank of Elizabethton, Tennessee.[1]

Count I of the FDIC's complaint seeks a declaration that a March 25, 1988 sale by the Westmoreland County sheriff (the

---

1. Civil Action No. 89–1623 has been consolidated with Civil Action No. 89–646, a suit brought by Citizens Bank against Edythe Sanders, various members of her family and a family-owned corporation. Both suits arise out of an ownership dispute concerning certain vehicles and amusement rides. Citizens Bank has not diligently prosecuted its claims, and has not filed any dispositive motions. Therefore, this opinion will focus on the cross-claims between the FDIC and Sanders. The court will order that Citizens Bank clarify its position with respect to ownership of the property within thirty days.

"sheriff's sale") to Sanders of vehicles and amusement rides (the "rides"), should be set aside due to the gross inadequacy of consideration paid by Sanders. Counts II and III seek declarations that the sheriff's sale should be set aside due to fraud and fraudulent conveyance, respectively. Count IV seeks a declaration that the FDIC has the right to sell the rides free and clear from any interest asserted by the defendants.[2]

Some background is necessary to understand the FDIC's claims.

Ken–Penn Amusement, Inc. and Nova Expositions, Inc. are corporations which are owned or controlled by various members of the Sanders family, including Ronald D. Sanders (Edythe Sanders' husband) and Ralph and Olga Sanders (Edythe Sanders' in-laws). Prior to the sheriff's sale, there is no dispute that Ken–Penn owned the rides and leased them to Nova. (Deposition of Ralph Sanders, p. 55).

On March 25, 1988, Sanders purchased the rides at a sheriff's sale for one dollar. (Exhibit G to Sanders' cross-motion for summary judgment.)

Three days later, the FDIC obtained a judgment in excess of $300,000 against Ken–Penn in the Western District of Tennessee. (Exhibit B to FDIC's motion for summary judgment.) On August 28, 1988, the U.S. Marshal for the Southern District of West Virginia seized the rides in partial satisfaction of the FDIC's judgment against Ken–Penn. (Exhibit C to FDIC's motion.) At the time of the seizure, the rides were being operated in West Virginia by Nova Expositions, Inc. (E. Sanders Deposition, p. 17.)

Sanders asserts that at the time of the seizure she, not Ken–Penn, owned the rides. Sanders traces her alleged ownership to the sheriff's sale. Sanders argues that the sale was valid because she had confessed judgment against Ken–Penn in

March of 1982, but had chosen not to execute on this judgment until the sheriff's sale six years later. Sanders claims that this confessed judgment was based upon a promissory note from Ken–Penn to Sanders dated January 10, 1980, in the amount of $300,000. (E. Sanders Deposition, pp. 95–102.) The FDIC counters that neither this promissory note nor any other reliable indication of Ken–Penn's indebtedness to Sanders for this amount exists in the extensive record before this court, and therefore, the 1982 confessed judgment and the 1988 sheriff's sale are both invalid as sham transactions intended to protect Ken–Penn's assets, the rides, from the legitimate claims of creditors such as the FDIC.

## DISCUSSION

### I. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When deciding a motion for summary judgment, it is not the court's function to weigh and determine the truth of the matter, but rather simply to determine whether there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party has the burden of identifying those portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the ab-

---

**2.** After reviewing the expert reports submitted by Sanders and the FDIC on the value of the rides, appointing a court appraiser from a list of agreed-upon experts submitted by the parties, and considering and reconsidering the oral and written positions of the parties, this court, pursuant to a May 6, 1992 order, allowed the FDIC to sell the rides for a fair market price in order to preserve the value of the rides pending a final decision on the question of legal ownership. The proceeds are being held by the Clerk of the Court, pursuant to Fed.R.Civ.P. 67 and Local Rule 39.

sence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party then must go beyond the pleadings and, by affidavits, depositions, answers to interrogatories and admissions on file, designate facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

The court may disregard an assertion made in an affidavit which is contradictory to earlier deposition testimony when determining whether a genuine issue of material fact exists. *Hackman v. Valley Fair and Local 575, International Brotherhood of Teamsters,* 932 F.2d 239, 240 (3d Cir.1991). Affidavits which are merely conclusory and lacking in specific facts may be properly disregarded by the court. *Shaw by Strain v. Strackhouse,* 920 F.2d 1135, 1144 (3d Cir.1990).

## II. *The Timeliness of the FDIC's Suit*

◼ Sanders' cross-motion for summary judgment states that the FDIC does not have "standing" to bring this case because the statute of limitations has run. (Sanders' cross-motion, ¶ 3.) Sanders traces her interest in the rides to her 1982 confession of judgment, and argues that the FDIC was required to bring its lawsuit challenging that interest long before 1988. Sanders claims that the FDIC either did, or should have, discovered and challenged her interest in the rides much earlier than 1988 since it was involved in litigation against Ken–Penn dating back to 1983. (Sanders' cross-motion, pp. 2–3.)

The FDIC and Sanders agree that under Pennsylvania law there is a two-year limitation for this type of action. 42 Pa.C.S.A. § 5524 (1982). It is also irrefutable that "[a] cause of action for fraud does not accrue until 'the fraud has been discovered by the exercise of due diligence.'" *Bhatla v. Resort Development Corp.,* 720 F.Supp. 501, 512 (W.D.Pa.1989), *citing Rothman v. Fillette,* 503 Pa. 259, 264–65 n. 3, 469 A.2d 543 (1983). Therefore, Sanders—as the party movant on this issue, and as the party bearing the ultimate burden of persuasion at trial—has the burden of demonstrating by competent evidence that the FDIC knew about the fraudulent acts of which it complains more than two years before filing suit, or that the FDIC would have known about the fraud if it had exercised due diligence. This court rejects both scenarios.

Sanders has brought no evidence of record to the attention of the court that could reasonably be read to suggest that the FDIC had actual knowledge of her alleged interest in the rides prior to the sheriff's sale in 1988.

◼ Sanders has also failed to produce sufficient evidence that the FDIC reasonably should have known about her confessed judgment against Ken–Penn. Affidavits which are merely conclusory and lacking in specific facts may be properly disregarded by the court. *Shaw by Strain,* 920 F.2d at 1144. Thus, the conclusory affidavits and other vague assertions made by Sanders about what she believes the FDIC could have known have been disregarded.

Although it is not the FDIC's burden, it has offered evidence supporting the position that it cannot be expected to have had knowledge of Sanders' alleged interest in the rides prior to the 1988 sheriff's sale. For example, the president of the company that was leasing the rides from Ken–Penn testified that there were no changes in the conditions of, or the parties to, the lease or the day-to-day operations of the rides after Sanders allegedly gained her interest in 1982. (Butter Deposition, p. 64.) If the person who was leasing the rides was not aware of Sanders' newly-acquired financial stake in the rides, a jury could not reasonably find that the FDIC should have known about it.

Therefore, this court finds as a matter of law that the fraud complained of by the FDIC in its complaint accrued on March 25, 1988, the day of the sheriff's sale, and that the FDIC's case was brought well within the statutory time limits.

## III. *The Fraudulent Nature of the 1988 Sheriff's Sale*

The FDIC—as the party moving for summary judgment on its claim of fraud

against Sanders, and as the party with the burden of persuasion at trial on this claim—must identify evidence of record demonstrating that the sheriff's sale was fraudulent as a matter of law.

■ Under Pennsylvania law, a fraudulent conveyance is defined as follows:

> Every conveyance made and every obligation incurred with an actual intent ..., to defraud either present or future creditors is fraudulent.

39 Pa.S.A. § 357 (1954). Intent to hinder, delay, or defraud creditors may be inferred from transfers in which consideration is lacking and where the transferor and transferee have knowledge of the claims of creditors and know that the creditors cannot be paid. *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1304 (3d Cir. 1986) *citing Godina v. Oswald*, 206 Pa.Super. 51, 55, 211 A.2d 91 (1965) (citation omitted). "Direct evidence is not needed to prove actual intent." *Id. quoting Continental Bank v. Marcus*, 242 Pa.Super. 371, 377, 363 A.2d 1318, 1321 (1976).

■ Sanders' own deposition testimony is sufficient to demonstrate that the confessed judgment against Ken–Penn was a sham transaction entered into for the purpose of shielding the company's assets against creditors such as the FDIC. For example, Sanders' deposition testimony establishes that: she did not investigate whether Ken–Penn could pay back the loans that she had supposedly made (pp. 68–71); she and her husband did not have any other source of income other than their modest salaries from Nova Expositions over the previous ten years (p. 82); no interest was charged on the alleged loans and there was no due date for their repayment (pp. 100, 108); she did not provide the $300,000 in one lump sum, but rather, the promissory note reflected numerous loans made over time, most of which she could not remember (p. 107).

The highly questionable nature of these loans is also apparent in the following Sanders' deposition excerpt:

> Attorney: ... Over time you've had savings that you've loaned to Ken–Penn. Do you know how much money that is and where those savings came from?
>
> E. Sanders: I just saved my money, some of my money.
>
> Attorney: From your employment?
>
> E. Sanders: From my employment, from different things.
>
> Attorney: What different things?
>
> E. Sanders: Like household money and that that I'd tuck away.
>
> Attorney: Are we talking over the last ten years more than $100,000?
>
> E. Sanders: Over the last ten years? Yes.

Sanders Deposition, pp. 74–75.

Ralph Sanders, Edythe Sanders' father-in-law and the president of Ken–Penn, has testified that most of the notes and loans allegedly made to Ken–Penn by Edythe Sanders were "phony." (Ralph Sanders Deposition, p. 35.) Mr. Sanders further asserted that the loan papers were drawn up to create a paper trail to "cover up something." (Ralph Sanders Deposition, p. 36.) Edythe Sanders responded that her father-in-law is "not a competent person because he is afflicted with senile dementia (chronic organic brain syndrome)." (E. Sanders supplemental affidavit based upon newly-discovered evidence, in opposition to FDIC's motion, ¶ 10.) She further claimed that Ralph Sanders is vindictive and made these claims due to family differences. (Sanders Supplemental Affidavit.)

These baseless and vindictive charges exchanged by Edythe Sanders and Ralph Sanders do not create a legitimate and material issue of disputed fact precluding judgment as a matter of law in this case. This court need not choose between the stories told by Edythe and Ralph Sanders, because the dispute between them is not a meaningful one requiring the services of a fact-finder. *See e.g., Metal Marketplace v. United Parcel Service*, 733 F.Supp. 976 (E.D.Pa.1990) (cannot use affidavits, and conclusory allegations to assert facts in an attempt to create a meaningful dispute). *Harter v. GAF Corp.*, 967 F.2d 846, 850–52 (3d Cir.1992) (a nonmoving party has an affirmative burden of coming forward with

specific facts showing a need for a trial, and cannot merely rely upon conclusory allegations in pleadings, memoranda and briefs to establish genuine issues of material fact).

Therefore, this court finds that the "loans" underlying Sanders' 1982 confessed judgment were made without sufficient consideration. Since these "loans" were the basis of Sanders' status as a judgment creditor at the 1988 sheriff's sale, that sale was based upon a fraudulent conveyance and, as such, is invalid. *Voest–Alpine Trading USA v. Vantage Steel Corp.*, 919 F.2d 206 (3d Cir.1990) (sales based upon fraud not valid).

This finding—that the 1988 sheriff's sale was fraudulent as a matter of law—is supported by other overwhelming and uncontradicted evidence of record. Each of the traditional "badges of fraud" is present in this case. These indications of fraudulent intent include: absence of or negligible consideration; timing of the transfer; and the transferor's relationship to transferee. *In re Roberts*, 81 B.R. 354 (W.D.Pa.1987).

Gross inadequacy of price is a sufficient basis for setting aside a sheriff's sale. *Capozzi v. Antonoplos*, 414 Pa. 565, 201 A.2d 420, 422 (1964) (citation omitted). As discussed above, the 1988 sheriff's sale to Sanders was based upon a fraudulent conveyance. Since Sanders was not a valid judgment creditor, the one dollar paid for the rides at the sheriff's sale was grossly inadequate consideration.

It is also settled law in Pennsylvania that where the timing of a sheriff's sale is intended to hinder, delay or defeat creditors, and the purchaser at the sale has knowledge of this improper intention, the sale should be null and void. *See e.g., In re Roberts*, 81 B.R. at 367 (the court found fraud where the day after a $20,000 state court judgment was entered against a debtor, he attempted to shield his assets by correcting a "mistake" in a property transfer finalized seven months earlier). Sanders waited six years to execute her confessed judgment and schedule a sheriff's sale. She scheduled the sale for three weeks prior to a trial in the Western District of Tennessee between the FDIC and Ken–Penn, a company owned and controlled by her husband and his family. At this trial, judgment was entered in favor of the FDIC and against Ken–Penn for $300,000. The FDIC was unable to execute on this judgment because of Sanders' preemptive strike. Considering the totality of circumstances in this case, this court believes that no reasonable jury could find the timing of Sanders' actions merely coincidental.

Finally, transfers of property within families are often scrutinized closely by a reviewing court. Transfers of property between spouses in an attempt to defraud creditors, or transfers in which an insolvent debtor transfers property to his spouse and continues to enjoy the property, are classic instances of fraud. *In re Roberts*, 81 B.R. at 367, *citing In re Kaiser*, 722 F.2d 1574 (2d Cir.1983). This case is analogous to these classically fraudulent transfers. Sanders, in cooperation with at least her husband and Ken–Penn, drew up loan notes to create indebtedness where none existed, based a confession of judgment on those sham notes, held this judgment for six years, and, immediately before a valid creditor could recover its interest, executed the fabricated judgment to protect the rides. On the record before this court, no other scenario is supportable.

## CONCLUSION

This court finds that the FDIC has met its burden in providing enough evidence to show that a reasonable jury could not find in favor of Sanders. Therefore, its motion for summary judgment will be granted.

With respect to Sanders' cross-motion, the court finds that Sanders has not met her burden. Sanders has not provided enough evidence to show that the FDIC knew or should have known about the 1982 confessed judgment against Ken–Penn prior to the sheriff's sale. Further, Sanders did not provide documentation that would allow a reasonable jury to find that the 1982 confessed judgment was based upon valid consideration. Therefore, her cross-

motion for summary judgment will be denied.

An appropriate order will follow.

## ORDER

AND NOW, this 31st day of July, 1992, upon consideration of the FDIC's motion for summary judgment, filed at Document No. 43, and memoranda in support thereof and in opposition thereto, and Edythe Sanders' cross-motion for summary judgment, filed at Document No. 48, and memoranda in support thereof and in opposition thereto,

IT IS HEREBY ORDERED that the FDIC's motion is GRANTED and Edythe Sanders' motion is DENIED.

IT IS FURTHER ORDERED that judgment shall be and hereby is entered against Edythe Sanders, Ken–Penn Amusement, Inc. and Nova Exposition, Inc., and in favor of the Federal Deposit Insurance Corporation, in its corporate capacity.

IT IS FURTHER ORDERED that the motion to dismiss of Ken–Penn Amusement, Inc., filed at Document No. 8; the motion to dismiss for failure to state a claim by Edythe Sanders, filed at Document No. 9; the motion by plaintiff to strike affidavit of Edythe Sanders, filed at Document No. 14; the motion to release property for lack of levy by defendant Edythe Sanders, filed at Document No. 18; the motion to protect property by defendant Edythe Sanders, filed at Document No. 21; the motion to dismiss by defendant Nova Expositions filed at Document No. 30; and the motion to strike affidavit of Jesse South by defendant Ken–Penn filed in Civil Action No. 89–646 at Document No. 21 are all now MOOT due to this court's decision on the cross-motions for summary judgment.

IT IS ALSO ORDERED that Citizens Bank of Elizabethton, Tennessee, shall provide specific documentation showing the existence and continuing validity of its claim of interest in the amusement rides and vehicles at issue in this case, vis-a-vis the FDIC, by August 31, 1992. Failure to do so will result in judgment being entered in favor of the FDIC and against Citizens Bank in this case.