David J. PITTI, Appellant

v.

**POCONO BUSINESS FURNITURE, INC., Robert M. Vonson, and Stephen Jennings.**

Commonwealth Court of Pennsylvania.

Argued June 10, 2004.

Decided Oct. 7, 2004.

Scott B. Bennett, Honesdale, for appellant.

John J. Martin, Honesdale, for appellee.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

David J. Pitti appeals from an order of the Court of Common Pleas of Wayne County, which in an action to quiet title denied Pitti's request to terminate all interests of Pocono Business Furniture, Inc. (Pocono Business) and Robert Vonson, its owner, and Stephen Jennings, his counsel (collectively Appellees) in a commercial property purchased by Pitti at a private tax sale. The court also denied Pitti's request to invalidate mortgages on the property held by Vonson and Jennings and to grant monetary damages. Pitti raises the following questions: (1) whether a property owner who is delinquent in the payment of real estate taxes may avoid the consequences of a tax sale by recording a mortgage on the property eight years after the tax lien has attached and (2) whether the sale on the senior tax lien divests a junior lien recorded eight years after the senior lien attached.

Since 1985 Pocono Business has held title to a six-acre commercial piece of property in Wayne County. In January 1994 the roof of a warehouse in which office furniture was stored collapsed. Within the next year or two the business ceased operating, and subsequently the physical condition of the property deteriorated to a now dilapidated state. In addition, the business failed to pay real estate taxes on the property for tax years 1992 through 2001. On September 11, 2000, the property was exposed to upset tax sale in accordance with the Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101— 5860.803. On that same day, Vonson recorded a $400,000 mortgage against the property, and Jennings recorded his $30,000 mortgage. The property did not sell at the upset tax sale. In September 2001 Pitti submitted a bid on the property, and after notice to Appellees and taxing authorities Pitti received a deed to the property in November from the Wayne County Tax Claim Bureau.

In December 2001 Pitti filed his complaint to quiet title against Appellees, seeking to confirm his title free of the aforementioned mortgages. The trial

court held a hearing on July 22, 2002, and on July 24 the court granted ejectment against Pocono Business but denied all other relief. After various procedural maneuvers not directly relevant to the disposition of this appeal, a second hearing was held on October 14, 2003. By order dated October 30 the court denied Pitti's request to quiet title and for money damages. The court rejected Pitti's argument that the private tax sale extinguished the mortgages by operation of law as he produced no legal authority to support this claim, and it concluded that Pitti failed to prove that the transactions represented "sham mortgages." The court accepted Appellees' testimony that bankruptcy proceedings had resulted in satisfaction of a Mellon Bank lien, that satisfaction of the lien created some equity in the property and that Vonson and Jennings were owed money by the business. The mortgages were placed on the property after bankruptcy proceedings ended. Therefore, the court granted judgment in favor of Appellees.[1]

■ Pitti argues in his appeal to this Court that the Vonson and Jennings mortgages are simply sham mortgages intended to prevent loss of the property due to their failure to pay real estate taxes. In addition to the tax delinquencies, Pitti points out that Appellees never received any payments on the mortgages and never sought to maintain or insure the property. Pitti suggests that allowing these sham transactions to stand will encourage others to use the same technique to avoid loss of a property at tax sale. Appellees do not directly rebut this argument, but instead they assert that the mortgages were properly recorded and that neither the Tax Sale Law nor any judicial precedent allows a mortgage lien to be divested by means of a private tax sale, regardless of when the mortgage was recorded.

■ A sham transaction is an agreement or exchange that has no independent economic benefit or purpose and is entered into solely for some illegitimate purpose, typically to avoid tax obligations. Black's Law Dictionary 1380 (7th ed.1999). One authority has suggested that to avoid the designation there must be a "genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached. . . ." *Frank Lyon Co. v. United States*, 435 U.S. 561, 583–584, 98 S.Ct. 1291, 1303, 55 L.Ed.2d 550, 567 (1978). In reviewing a suspected sham transaction, a court may examine not only the legal form of the transaction but the surrounding cir-

---

1. On review of a trial court's ruling in an action to quiet title, this Court is limited to determining whether the findings of fact are supported by substantial evidence, whether an error of law has been committed or whether there has been an abuse of discretion. *Bride v. Robwood Lodge*, 713 A.2d 109 (Pa.Super.1998).

In his Brief's statement of jurisdiction, Pitti questions whether this Court has jurisdiction over this appeal from an action to quiet title because the appeal does not involve exceptions to or a request to set aside a tax sale. The issue of whether a private sale on a tax lien divests a subsequent mortgage lien re-

quires interpretation of sections of the Real Estate Tax Sale Law addressing such liens, and therefore this Court may exercise jurisdiction. Section 762(a)(4)(i)(A) of the Judicial Code, *as amended*, 42 Pa.C.S. § 762(a)(4)(i)(A); *see Donaldson v. Ritenour*, 354 Pa.Super. 568, 512 A.2d 686 (1986) (appeal from action to quiet title requiring interpretation of notice provisions of Real Estate Tax Sale Law transferred to Commonwealth Court). *Also see* Section 704(a) of the Judicial Code, 42 Pa.C.S. § 704(a); *Commonwealth v. Faust*, 702 A.2d 598 (Pa.Cmwlth. 1997) (even if court lacked jurisdiction it may, within its discretion, decide to sustain jurisdiction and proceed with an appeal).

cumstances and events as well to ascertain the parties' intentions in concluding the transaction. *Iscovitz v. Filderman*, 334 Pa. 585, 6 A.2d 270 (1939).[2] Thus a court may find a transaction to be a sham and unenforceable even though it complies with relevant legal requirements. *Jennings v. Cutler*, 288 N.J.Super. 553, 672 A.2d 1215 (App.Div.1996) (finding that gift of mortgage was legitimate because true donative intent shown by circumstances leading to transaction).

By way of example, in *Citizens Bank of Elizabethton, Tennessee v. Ken–Penn Amusement, Inc.*, 798 F.Supp. 268 (W.D.Pa.1992), the court set aside the sheriff's sale of certain property because, although the transactions resulting in a confessed judgment were properly executed, the loans that were the basis of the judgment were part of a scheme to shield the assets from creditors. In reaching this conclusion, the court noted that the two corporations involved in the transactions were owned and controlled by the same family; that the judgment creditor, also a family member and by all indications a person of modest means, could not explain how she obtained some $300,000 in purported loan money; that no interest was charged on the loans and no repayment due date existed; and that the judgment creditor did not investigate whether the debtor corporation could actually repay the loans. The court also noted that the creditor waited six years before executing her confessed judgment, scheduling the sheriff's sale three weeks before a legitimate creditor went to trial and obtained a $300,000 judgment against the corporation. The court concluded that "[c]onsidering the totality of circumstances in this case, the court believes that no reasonable jury could find the timing of Sanders' [judgment creditor] actions merely coincidental." *Id.* at 273.[3]

The circumstances surrounding the sale of Appellees' property and the creation of the Vonson and Jennings mortgages compel the conclusion that the mortgages are not, as the United States Supreme Court described in *Frank Lyon Co.*, "genuine multiple-party transaction[s] with economic substance which ... [are] compelled or encouraged by business ... realities."

---

**2.** In *Iscovitz* the Supreme Court concluded that a husband's conveyance of real property to a straw man and then back to himself and his wife as tenants by the entireties was a sham transaction intended to defraud creditors. The court commented:

> Each of the transactions in the instant case viewed alone might appear to be an ordinary and proper one, but when considered together the only reasonable conclusion is that Filderman initiated this series of transfers of all his property for the sole purpose of preventing plaintiff from securing payment of his claim. That it was proper for the court below to examine the surrounding circumstances and subsequent events in ascertaining Filderman's intention cannot be doubted.

*Iscovitz*, 334 Pa. at 590, 6 A.2d at 272.

**3.** In Pennsylvania a mortgage duly executed will be presumed to be valid until the contrary is shown, and the burden is on the party attacking the mortgage to prove its invalidity. *In re Dolata*, 306 B.R. 97 (Bankr. W.D.Pa.2004). A sham mortgage is an analogous transaction, and it may also serve the purpose of removing property from the reach of creditors. For example, in *United States v. Klimek*, 952 F.Supp. 1100 (E.D.Pa.1997), the court set aside a sham mortgage after finding that it was designed solely to avoid federal tax liens. In that case Klimek, under investigation for tax fraud, bought a residence in the name of one corporation and then took out a large mortgage on the property from a second corporation. The court noted that Klimek created both corporations; Klimek was the president of both corporations; neither corporation conducted significant business; and no payments were ever made on the mortgage. The court, therefore, concluded that the corporations were merely Klimek's alter egos and that the transactions were devoid of economic substance.

*Frank Lyon Co.*, 435 U.S. at 583, 98 S.Ct. at 1303, 55 L.Ed.2d at 567. The mortgages were recorded on the very day that the property was exposed to upset tax sale, the timing of which suggests a conclusion too obvious to state. There is no evidence in the record that the property is of sufficient value to secure the mortgages. Vonson and Jennings received no payments on the mortgages, nor could there be any expectation of receiving such payments because Pocono Business ceased operations sometime shortly after the warehouse roof collapse in January 1994. Prior to this litigation, Appellees took few, if any, actions consistent with those of a mortgagee to protect his or her interest in a property: Appellees paid no real estate taxes; the property was allowed to deteriorate into a dilapidated state; the property insurance was allowed to lapse; and Appellees evidently made no attempt to sell the property or to otherwise address the tax delinquencies.[4]

Based on its review, the Court cannot fully agree with the trial court's determination because it erred in considering only Appellees' stated rationale for recording the mortgages and ignoring the broader circumstances surrounding the transactions. The evidence does not support findings that the Vonson and Jennings mortgages were legitimate transactions as they have nothing to do with securing payment from an indebted mortgagor—no such payments will be forthcoming. Therefore, the trial court's ruling in favor of Appellees on this issue constitutes an error of law. Apart from allowing Appellees to avoid some of the effects of a tax sale, their mortgages have no practical function and provide no economic substance. *Frank Lyon Co.* They are, as the precedents describe, sham mortgages. As such, Pitti is entitled to have them set aside and to have title to the subject property held to be free and clear of the mortgages.[5] The Court, accordingly, reverses

4. The trial court attributed the timing of the mortgages to the disposition of Appellees' litigation with Mellon Bank. The court evidently was persuaded by Jennings' testimony that Appellees could not secure their interest until after completion of the Mellon Bank litigation and satisfaction of Mellon's lien. However, the mortgages were recorded on September 11, 2000, the day of the upset tax sale; Jennings testified that the Mellon Bank lien was not satisfied until December 2000. Nothing in the record explains this discrepancy or explains why Appellees could not have recorded their mortgages at an earlier date.

5. Pitti also argues that by operation of law the private tax sale, held pursuant to Sections 613 through 615 of the Tax Sale Law, 53 P.S. §§ 5860.613—5860.615, divested the mortgages as they were recorded after the tax liens had attached. Pitti cites *Household Consumer Discount Co. v. Extended Care Center, Inc.*, 299 Pa.Super. 74, 445 A.2d 154 (1982), for support. Section 615 of the Tax Sale Law provides that a deed secured through private tax sale will convey title free and clear only from all tax claims and judgments, and thus it provides no explicit statutory support for the proposition that mortgages are divested if they are recorded after the tax liens attach. In *Household Consumer Discount Co.*, the Superior Court noted that the common law rule was that a sheriff's sale automatically divested all liens and, therefore, that statutes had to be amended to contain positive language preserving liens that were made prior to the lien under which the tax sale was made. The court then stated: "We cannot conclude therefore that a statute must contain wording as to the effect of a sale for delinquent taxes in order to divest a mortgage; on the contrary, wording which *preserves* the lien of a prior mortgage would be necessary to provide the right." *Id.* at 155.

However, in the Tax Sale Law the legislature has provided a comprehensive statutory scheme for the sale of property in order to satisfy real estate tax liens, and the Act specifically addresses the effect each type of sale will have on liens. Thus, an upset tax sale will convey title subject to all recorded liens and mortgages. Section 609, 72 P.S. § 5860.609. A judicial sale conveys title free and clear of all liens and mortgages. Section 612(a), 72 P.S. § 5860.612(a). Thus the

that part of the trial court's order denying Pitti's request to quiet title with respect to each Appellee and to have the Vonson and Jennings mortgages set aside so that title to the subject property is free of the mortgages. The Court affirms that part of the trial court's order denying Pitti's request for damages inasmuch as his claim in this regard was not supported by the record.

### ORDER

AND NOW, this 7th day of October, 2004, that part of the order of the Court of Common Pleas of Wayne County denying Appellant David Pitti's request to quiet title with respect to each of the three Appellees, Pocono Business Furniture, Inc., Robert Vonson and Stephen Jennings, is hereby reversed. That part of the trial court's order denying David Pitti's request for damages is hereby affirmed.

Court cannot assume that the omission from Section 615 of any statement that liens and mortgages will be divested was inadvertent, and as a result the Court declines to apply the common law rule described in *Household Consumer Discount Co. See In re City of Pittsburgh,* 243 Pa. 392, 90 A. 329 (1914) (statutory provision in derogation of common law will be applied only if expressly stated or fairly implied from statute's language).