EXECUTORS OF MATTHEW L. EGERTON, appellants, and JAMES EGERTON, respondent.

1. To constitute a *donatio mortis causa*, there must not only be a clear intention to give, but an actual delivery at the time of the alleged gift.

2. The giving of one's promissory note or acceptance by the donor to the donee, will not constitute a *donatio mortis causa*. It is otherwise with

Executors of Egerton *v.* Egerton.

the gift of a note, acceptance, or bond of a third party, which may pass by endorsement or delivery.

3. An exception to a charge allowed by the Orphans Court not sustained, where, in the opinion of this Court, an allowance of a part of the sum was warranted, but the preponderance of the evidence is not so decisive as to require a modification of the decree.

4. An oath made by a party to a claim against an estate, upon the statement of the executor that he would pay it if the claimant swore to it, is voluntary and worthless.

5. An executor will not be allowed a charge against the estate, for services rendered in the lifetime of the testator, where the services rendered by the parties were mutually beneficial, and it is apparent that no pecuniary remuneration was expected or intended.

6. It is the duty of an executor, not only to exhibit his account for allowance, but to use diligence in bringing it to a final settlement.

7. Decree of the Orphans Court charging the executors, individually, with the costs of suit, where they have permitted great and unwarrantable delay in the final settlement of their account, approved.

*Mr. Leupp,* for appellants.

*Mr. Schenck,* for respondent.

THE ORDINARY. This case comes before the court upon an appeal from a decree of the Orphans Court of the county of Middlesex, upon exceptions filed to the account of the executors as reported for settlement and allowance. The first ground of appeal is, that the court below sustained an exception to the following item in the account, viz. "Cash paid Eliza S. Egerton, $800."

The charge is attempted to be supported on the ground that it was a donation *mortis causa.* The evidence in support of the claim is, that the testator was the owner of eighty shares in the City Bank of Newark, which, by his will, he had bequeathed to his wife. On the 7th of November, 1859, the directors of the bank resolved to increase its capital stock $50,000, giving to its old stockholders the privilege of subscribing for the new stock, in proportion to the amount of stock held by them respectively. They ordered books of

subscription to be opened on the first of December, and required the subscription to be paid in full by the 5th of January, 1860. The testator was entitled, by virtue of the stock held by him, to subscribe for sixteen additional shares by the payment of $800, the par value of the stock. The testator in his lifetime requested Goyn D. McCoy, then his agent for the transaction of his business, and who is also one of the executors, to subscribe for the additional shares to which he was entitled, for the benefit of his wife. When subscribed and paid for, they were to be Mrs. Egerton's. He told McCoy that he wished him to take the stock for the benefit of his wife, in her name, and collect the money and pay for it. This was on the 10th or 11th of November, 1859. The stock was afterwards subscribed for in the name of the testator, but the price was not paid, nor was the scrip issued, till after the testator's death. It was then paid out of the funds of the estate by the executor, and by his orders the scrip was issued in the name of the wife.

To constitute a *donatio mortis causa*, there must not only be a clear intention to give, but an executed gift. "Gifts of chattels personal, are the act of transferring the right and the possession of them; whereby one man renounces and another man immediately acquires, all title and interest therein; which may be done either in writing, or by word of mouth, attested by sufficient evidence, of which the delivery of possession is the strongest and most essential." 2 *Bl. Com.* 441. This definition of a gift *inter vivos*, is equally applicable to a *donatio mortis causa*. There must be a subject capable of passing by delivery, and an actual delivery at the time of the alleged gift. *Ward* v. *Turner*, 2 *Vesey, sen.*, 431; 2 *Kent's Com.* 445; 1 *Story's Eq. Jur.*, § 607 *a, c*; *Roberts* v. *Wills, Spencer* 597; *Parish* v. *Stone*, 14 *Pick.* 203; 1 *Williams on Ex'rs* 651–4.

The evidence does not bring the present case within the principle. The gift must have been either of the stock, or of the money to purchase the stock. It was clearly not a gift of the stock, for the testator never owned it. The stock was

not paid for, nor was the scrip issued, in the lifetime of the testator. Nor was it a gift of the money. Not one dollar was delivered by the testator to his wife. The money was collected, and the stock paid for by the executor out of the estate, after the testator's death. It so appears on the face of the account. The charge is for " cash paid by the executor to Mrs. Egerton."

Now, if it had been a donation by the testator *mortis causa*, the right of the donee would have been absolute upon the donor's death, subject only to the rights of creditors. The money would have formed no part of the estate. It would not have been the subject of ecclesiastical jurisdiction, nor have formed a component part of the executor's account. The donee would have taken not through, but paramount to the executor. *Nicholas* v. *Adams,* 2 *Wharton* 22.

It is clear that, at the time of this alleged gift, there was and could have been no delivery. The subject matter was not capable of passing by delivery. All that the husband could claim at the time of the pretended gift, was the mere privilege of subscribing for the stock. And after the subscription had been made, all that he had was the right of having the stock issued upon the payment of the par value. Giving full credence to the evidence, it proves nothing more than an intention on the part of the husband that the wife should have the benefit of his privilege of subscribing for the stock of the bank. If he had entered into an express contract with her that she should have the advantage of the contract, it would, as a contract *inter vivos*, have been null and void. Nor could it operate as a *donatio mortis causa.* Even the giving of his own promissory note, or acceptance, by the donor to the donee, it is well settled will not constitute a *donatio mortis causa.* It is not the gift of a chattel, but a mere contract to pay. It is otherwise with the gift of a note, acceptance, or bond of a third party, which may pass by endorsement or delivery. *Holiday* v. *Atkinson,* 5 *Barn. & Cress.* 501; *Raymond* v. *Sellick,* 10 *Conn.* 484; *Parish* v. *Stone,* 14 *Pick.* 203; *Harris* v. *Clark,* 2 *Barb. S. C. R.* 94;

*S. C.,* 3 *Comstock* 93. The court were clearly right in sustaining this exception and rejecting the claim of the executors.

The second ground of appeal is, that the court sustained an exception to a charge of $200 for cash paid Andrew T. Anderson. The bill rendered was for services of Anderson and wife from July 2d to December 23d, 1859, and was paid by one of the executors. Anderson was a brother of Mrs. Egerton. He went with his wife to the house of the testator in July on a visit, but, at the desire of the testator, remained till his death. The evidence as to the value of their services, or whether they were rendered for hire, or as mere offices of friendship, is conflicting. Clothing and dresses are proved to have been purchased in the testator's name and given to Anderson and wife, to the value of about $50, which, according to the testimony of several of the witnesses, was more than their services were worth. The proof would, in my opinion, have warranted an allowance of at least a part of this charge, but the preponderance of the evidence is not so decisive as to require a modification of the decree. The fact that a bill has been paid by the executor affords, under ordinary circumstances, a fair presumption of its justice and propriety. As the legal representative of the estate, he is authorized to pay all just claims against it. And while he acts within the line of his duty and in good faith, every fair presumption is to be made in his favor. He is, however, but a trustee for others, and may not sacrifice their rights with impunity. If he pays groundless or illegal claims upon the estate, he must bear the loss. If he pays disputed claims, especially after being warned, he acts at his peril. Good faith and a regard for the interest of the estate must characterize all his measures. In this case, the interest of the wife of the testator, who was the legatee of the great bulk of the estate, was in direct conflict with the interest of the residuary legatee, who alone is interested in this controversy. There is a manifest disposition on the part of the executor, by whom this claim was paid, to favor claims against the estate. The executor knew that this claim arose under circumstances

which rendered its propriety, to say the least, doubtful. After it was presented for payment, he was warned by the residuary legatee that the claim was unreasonable and unjust, and was requested not to pay it. He persisted in doing so, assigning as a reason, not that the claim was just or legal, but that he would pay the bill if the claimants swore to it. An oath under the circumstances was voluntary and worthless. The conduct of the executor was a mere submission of the question to the conscience of the creditor. It was moreover an actual depriving the beneficial owner of the estate, of a trial by jury. The features of the case are strongly marked, and had all the facts disclosed by the evidence been presented to a court of equity for relief, it would have justified the interference of the court with the action of the executors in more respects than one, on the ground of constructive fraud.

The exception to the charge made by one of the executors of $1150, for services rendered by him in the lifetime of the testator, was properly sustained. The executor was a man of business, and was long in habits of intimate friendly and business relations with the testator. No book account is produced, no charge for the services appears to have been made, nor is there the least intimation in the evidence, that in the testator's lifetime it was expected or intended that such charge would be made. On the contrary, the executor repeatedly declared that he should make no charge, and on one occasion, after the death of the testator, said, as he himself admits, that he would be the most ungrateful of mortals to do so. The services rendered by the parties to each other appear to have been mutually beneficial, and it is apparent that no pecuniary remuneration was expected or intended. The charge in the account was, in fact, an after thought. It was not made when the account was originally filed, but was added after exceptions had been taken to the account.

The court were right in charging the executors, individually, with all the costs of the suit. The evidence in the cause and the whole history of the case, creates the belief that most of

the difficulty in the case has been occasioned by the conduct of one of the executors. And since the filing of the account, with a large amount of funds in their hands, they have permitted great and unwarrantable delay to occur in the final settlement. It is a mistaken idea that executors have acquitted themselves of their duty by filing their account in the Orphans Court, and then permitting it to slumber, or to draw its slow length through the courts till all the law's delays are exhausted, or till they are goaded to action by the order of the court. It is clearly their duty, not only to exhibit their account for allowance, but to use diligence in bringing it to a final settlement. They are often trustees for widows and minors, or absent persons and others, whose rights are unrepresented. It is an unjustifiable abuse of their trust to make the law's delays a pretext for holding the funds of the estate in their hands, often for their own benefit and greatly to the prejudice of those interested. I think the decision of the court in this regard eminently just as well as lawful, and calculated to effect a salutary check upon a prevalent and gross abuse.

The decree of the Orphans Court is affirmed, with costs.