288 N.J. Super. 553 (1996)
672 A.2d 1215
MICHELE JENNINGS, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
ALAN CUTLER, A. CUTLER HOME, INC., DEFENDANTS-APPELLANTS/CROSS-RESPONDENT, AND SURETY TITLE CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1995.
Decided March 15, 1996.
*556 Before SKILLMAN, P.G. LEVY and EICHEN, JJ.
Frank H. Wisniewski argued the cause for appellant/cross-respondent (Blank, Rome, Comisky & McCauley, attorneys; Mr. Wisniewski and Anne C. Singer, of counsel, and on the brief).
Benjamin Goldstein argued the cause for respondent/cross-appellant (Maressa, Goldstein, Birsner, Patterson, Drinkwater & Oddo, attorneys; Mr. Goldstein, of counsel).
*557 No other parties participated in this appeal.
The opinion of the court was delivered by EICHEN, J.A.D.
At the time this litigation arose, defendant Alan Cutler was a wealthy real estate developer and defendant A. Cutler Home Inc. (the corporation) was a closely-held corporation over which Cutler exercised majority control. In early 1990, plaintiff Michelle Jennings and Cutler met, began dating, and shortly thereafter, Jennings moved in with him. They lived together until July 1992 when the relationship dissolved. During the time they were together, Cutler presented Jennings with many extravagant gifts, including a new Mercedes Benz automobile. He also paid her expenses, such as her credit card bills, ranging from $7,000 to $10,000 per month, and a $29,000 dental bill.
In the spring of 1992, Cutler gave Jennings a $150,000 mortgage on one of the properties owned by the corporation. When the property was sold, however, Cutler refused to authorize payment to Jennings, and Jennings instituted this litigation.
The primary question presented is whether a duly perfected mortgage, given with the expectation it will be satisfied in the future out of the proceeds of sale of the liened property, can be the subject matter of a valid inter vivos gift.
Sometime in early 1992, Jennings asked Cutler for $250,000 because, she claimed, she was concerned about what she would do if something happened to him. The record reflects that when Cutler declined to give her cash, Jennings asked for a house at "The Beagle Club," one of the real estate developments owned by the corporation. According to Cutler, after "negotiating" with Jennings, they reached a compromise whereby he agreed to give Jennings a mortgage in the sum of $150,000 representing one-half the value of one of the Beagle Club development houses; specifically, he agreed to give Jennings a mortgage on a sample home *558 located at 32 Elliot Drive in the Township of Voorhees, Camden County (32 Elliot Drive).
Cutler testified that, when Jennings asked for the mortgage, he did not believe that, by agreeing, he was really giving her anything of value. He stated:
[A]t that point I saw a way to basically satisfy her mind that she was getting something through this mortgage. In my mind the mortgage was not giving her anything ... because the house wasn't sold. It was a sample house at the time. Who knows if I was ever gonna sell it.... I was renting houses that I had built on spec in other developments. So at that point when the mortgage was suggested that was almost an out for me, that I didn't have to do anything. I didn't have to put up any money. (emphasis added)
After she agreed to accept the mortgage, Jennings testified Cutler told her to retain an attorney "to make sure everything was legal." Jennings then retained Michael Ridgway and Cutler paid his attorney's fee. The record reflects that in an undated letter, Cutler requested Ridgway to draft an agreement reflecting the parties' intentions. The letter to Ridgway from Cutler provided:
Enclosed please find check # 1394 in the amount of $500.00. Let this act as retainer/deposit in this matter. Miss Jennings and I have come to an agreement that I will gift to her $150,000. Miss Jennings would only receive this gift at the settlement of 32 Elliot Drive at The Beagle Club in Voorhees, New Jersey.
* * * * * * * *
Since you will be representing Miss Jennings in this matter, can you draw up an agreement between her and I, that in her best interest, will guarantee her payment of this gift at the settlement when it occurs of 32 Elliot Drive. I think that I have been clear with my intentions in this matter. If you could draft this agreement for Miss Jennings to review as soon as possible it would be greatly appreciated. (emphasis added)
In the letter, Cutler also explained his plans for satisfying existing liens on various lots in the development tract including 32 Elliot Drive, indicating his intention to sell three other lots and thereby obtain a release of all title restrictions for the entire development tract.
On April 9, 1992, Ridgway forwarded to Jennings a proposed form of note and mortgage instructing her to submit them to Cutler for his signature as an officer of the corporation and to return them to Ridgway for recording. In the letter, Ridgway *559 advised Jennings there probably was "sufficient equity in the property," but also cautioned that some "untoward event" still could interfere with payment of the mortgage.
Although the mortgage stated there was "no due date for payment of th[e] obligation," the note and mortgage, dated April 10, 1992, provided that the corporation would pay Jennings $150,000 out of the proceeds of sale of 32 Elliot Drive. Additionally, the note stated:

[Jennings] has been given a Mortgage dated April 10th, 1992, to protect [her] if the promises made in this Note are not kept. I agree to keep all promises made in the Mortgage covering property I own located at 32 Elliot Drive in the Township of Voorhees in the County of Camden and State of New Jersey. All terms of the Mortgage are made part of this Note. (emphasis added)
Upon receiving the note and mortgage, Cutler asked his employee, Cheryl DiSanti, a licensed real estate agent, to determine if the mortgage and note were legal documents and to explain their import to Jennings, which she did. Then Cutler executed and notarized the note and mortgage and returned both instruments to Ridgway, who had the mortgage recorded. Thereafter, Ridgway sent the note and mortgage to Jennings, who secured them in her safe deposit box.
On June 29, 1993, after the relationship between Jennings and Cutler had ended, the corporation sold 32 Elliot Drive. At the closing, Cutler refused to authorize payment of $150,000 to Jennings from the proceeds of sale. Consequently, Surety Title Corporation (the title company) withheld the funds and placed them in escrow at Cutler's direction.
Jennings instituted suit against Cutler, the corporation, and the title company,[1] on several grounds, including breach of contract, fraudulent misrepresentation and tortious interference with contract. The judge disposed of most of the claims by motion, and the case proceeded on the issue of whether a completed gift had *560 been accomplished by Cutler's transfer of the executed note and mortgage to Jennings.
On the motion for summary judgment, defendants contended Jennings had failed to demonstrate the existence of an inter vivos gift, because she had not proved delivery, irrevocable relinquishment of dominion and control over the subject matter of the gift, and donative intent. Cutler conceded he intended to give, and did give, Jennings the mortgage, but insisted that his true intent was to give her nothing. He argued that the property may never have been sold and even if it were sold, he still maintained control over the sales proceeds. Thus, he argued that because he never relinquished control over the money, the gift was incomplete. Relying on dicta in Scherer v. Hyland, 153 N.J. Super. 521, 527, 380 A.2d 704 (App.Div. 1976), aff'd, 75 N.J. 127, 380 A.2d 698 (1977), Cutler further asserted that the mortgage had no independent legal force because a promise to pay money in the future for which no consideration is given cannot be the subject of an inter vivos gift.
On the motion for summary judgment, the judge determined that the "delivery of [the] mortgage and its recordation satisf[ied]" the elements of delivery and relinquishment of dominion and control:
I'm holding that there is a difference between a note or a check on the one hand, an IOU whatever you want to call it which, in fact, essentially says, I will do something in the future, and a mortgage which is recorded which is then the relinquishment of control over the asset to the extent of that mortgage, the land, it could be land and improvements, whatever it is.
The parties proceeded to trial on the remaining issue of intent. At the conclusion of trial, the judge reiterated his prior ruling:
I had held earlier that as a matter of law two of the [gift] elements were shown. In other words, delivery, was it clear that the mortgage was turned over by defendant to the plaintiff and quite candidly I don't think that was ever in dispute? And two, did it come out to an absolute and irrevocable relinquish[ment] of ownership and dominion in defendant over the object given?
The judge then made findings concerning Cutler's lack of credibility, specifically commenting on Cutler's attempt to obfuscate the *561 issue of his intent by claiming he never had the intention to give her the money:

For Mr. Cutler, ... I was not at all confident in defendant's recitation of his past state of mind. And I arrived at that conclusion for several reasons. First of all, he's indicated he's a builder and yet he says he didn't believe, in essence, that a mortgage created ... a protective lien. He's a mortgagee or was a mortgagee and yet he didn't think there was protection by the creation of a mortgage lien.
* * * * * * * *
[H]is knowledge had to be reinforced by [his awareness the mortgage would be recorded as a lien on the property]. [He] was aware of the financial information requested of him so a determination could be made of any equity in the Elliot Drive property. From that, he had to have been aware that the giving of the mortgage was something more than just a symbol.
Another thing of influence to me was the fact that the documents were notarized. There's a certain formality to all of this....
* * * * * * * *
He never said to anyone else at the time, my intent is other than what everything else shows.
Mr. Cutler is not a babe in the woods. He's a sophisticated businessman. And I am unwilling to accept in his instance the application of the old song title, I didn't know the gun was loaded. All of these lead me to the conclusion to satisfy me clearly, convincingly, thoroughly that there was an intent on the part of Mr. Cutler to give the lien, the mortgage and he knew full well what his consequences were. (emphasis added)
Thus, the judge concluded that regardless of Cutler's unexpressed intentions when he delivered the mortgage and note to Jennings, Cutler unequivocally manifested his intent to make a gift of the $150,000 mortgage to Jennings, subject only to the possibility of defeasance if 32 Elliot Drive were not sold, or if sold, did not generate sufficient equity to completely satisfy the mortgage. The trial court found Cutler's testimony regarding his secret intent was not credible, and rejected Cutler's belated attempt to set aside a clearly executed agreement, impliedly finding that the parties "intended the mortgage to secure payment of $150,000 if and when the property was sold and ... [if] sufficient equity [existed] to satisfy the obligation." Accordingly, the judge concluded the mortgage was a valid enforceable inter vivos gift and entered judgment in the sum of $150,000 plus *562 interest and costs in favor of Jennings, but denied Jennings' claim for attorneys' fees. We agree and affirm.

I.
The three elements required to establish an inter vivos gift are (1) a donative intent on the part of the donor; (2) an actual or symbolic delivery of the subject matter of the gift; and (3) an absolute and irrevocable surrender by the donor of ownership and dominion over the subject matter of the gift, at least to the extent practicable or possible, considering the nature of the thing to be given. In re Dodge, 50 N.J. 192, 216, 234 A.2d 65 (1967); accord Pascale v. Pascale, 113 N.J. 20, 29, 549 A.2d 782 (1988); see Basse v. Raab, 138 N.J. Eq. 432, 433, 46 A.2d 787 (E. & A. 1946).
These elements are interrelated. To constitute an inter vivos gift, not only must the donor have a clear intention to give a gift, but the gift must be completed. Clearly, Cutler had the intent to give the mortgage to Jennings. Although Cutler may not have wanted to make a present gift of $150,000 to Jennings, and even may have secretly regretted giving Jennings the mortgage on 32 Elliot Drive, nonetheless Cutler clearly manifested his intent to make a gift of the mortgage. His intent is reflected in his undated letter to Ridgway, instructing Ridgway to "draw up an agreement ... [which] will guarantee [Jennings] payment of this [$150,000] gift at the settlement ... of 32 Elliot Drive," and emphasizing he had "been clear with [his] intentions in the matter." Additionally, his intent is revealed by the formal manner in which his intentions were memorialized: that is, he accepted that the agreement would be embodied in the form of a mortgage, engaged his employee, a real estate expert, to assure the legality of the document and explain its legal significance to Jennings, and then executed the mortgage as presented. All of these actions manifested Cutler's intent to give Jennings the mortgage as a gift. Moreover, once Cutler executed the mortgage in recordable form and delivered it to Jennings, knowing it would be recorded, he *563 irrevocably relinquished his interest in the mortgage subject to its defeasance by Cutler upon sale of the property.
The law is well settled: For a gift to be complete, "one [person must] renounce[] and another ... immediately acquire[] all title and interest" in the subject matter of the gift, and the strongest and most essential evidence of completion is "delivery of possession" of the item given. Egerton v. Egerton, 17 N.J. Eq. 419, 421 (Prerog.Ct. 1864). Hence, a valid inter vivos gift requires "a subject capable of passing by delivery, and an actual delivery at the time of the alleged gift." Ibid.
In Egerton, the court declined to recognize as valid a gift by the donor to his wife of the privilege of subscribing for a new issue of stock in a company in which the donor already held shares. Although the stock had been subscribed for in the name of the donor's wife, the stock had not been issued or paid for by the donor before he died. The court held "[t]he gift must have been either of the stock, or of the money to purchase the stock." Ibid. Since the stock had not yet issued, the donor did not own and, therefore, could not give it as a gift. The court determined there was no gift "capable of passing by delivery," but instead "a mere contract to pay." Id. at 422. The instant case is materially different because the subject of the gift, the mortgage, was capable of delivery, and was, in fact, delivered.
Nonetheless, defendants argue that the gift of the mortgage is like the gift of a promissory note which merely represents a promise to pay money in the future and, therefore, cannot constitute a completed gift. We disagree. The giving of a mortgage, unlike a note, does not merely represent a promise to pay money in the future. Although satisfaction of the mortgage must abide a future event such as sale of the property for a sufficient price, that contingency does not render the gift incomplete. Unlike the gift of a note which is "the delivery of a promise only, and not the thing promised," Voorhees v. Woodhull, 33 N.J.L. 494, 498 (E. & A. 1869), here the "thing promised" and *564 delivered was the mortgage conveying to Jennings a present-existing legal interest in real estate. Moreover, once Cutler delivered the mortgage to Jennings, he relinquished all power to affect its validity except, of course, to obtain its cancellation upon sale of the property.
As for defendant's argument that lack of consideration voids the gift, on its face this argument appears unsound because by definition "a gift is a transfer without consideration," Herr v. Herr, 13 N.J. 79, 88, 98 A.2d 55 (1953). However, the fact that a mortgage is the subject matter of the gift adds another dimension to the analysis. Commentators disagree concerning whether consideration is required when a mortgage is intended as a gift. Great Falls Bank v. Pardo, 263 N.J. Super. 388, 400 & nn. 7-8, 622 A.2d 1353 (Ch.Div. 1993) (discussing various court decisions and commentaries); see also 29 New Jersey Practice, Law of Mortgages § 32, at 104-08 (Roger A. Cunningham & Saul Tischler) (1975). Professor Cunningham and Judge Tischler discuss the problem that arises when parties agree "to create an enforceable personal obligation gratuitously, without any consideration at all, and to secure its performance by a mortgage." 29 New Jersey Practice, supra, § 32, at 104. Although they acknowledge that "[i]n New Jersey, ... a promissory note, without consideration and not under seal, intended as a gift, cannot be made the basis for recovery either at law or in equity," id. at 105-06 n. 40 (citing Egerton v. Egerton, supra, 17 N.J. Eq. 419 and Voorhees v. Woodhull, supra, 33 N.J.L. 494), they, nonetheless, conclude that a mortgage given to secure performance of such a promise, though lacking in consideration, should be valid provided it is not a sham and the parties intend the mortgage as security for the obligation. Id. at 106-07 & n. 43. Professor Osborne agrees, stating:
There is no reason why a mortgage without a personal obligation should not be permitted. This is important in several types of cases [including] ... where the transaction is intended as a gift.
* * * * * * * *
In the gift cases, a suggested test of validity is whether the parties intended the mortgage to secure a debt or other personal obligation.

*565 [Osborne, Handbook on the Law of Mortgages § 104, at 162 (2d ed. 1970), quoted in part in 29 New Jersey Practice, supra, § 32, at 107 n. 46 (emphasis added).]
See also, 1 Glenn, Mortgages, Deeds of Trust and Other Security Devices as to Land § 5.6 (1943). But see Tiffany, Treatise on the Modern Law of Real Property, § 1401, at 278 (3d ed. 1939) ("Even though a consideration is not necessary to the validity of [a] mortgage.... [the] mortgage [is] invalid, not because it [is] not supported by a consideration, but because the obligation secured by it was not so supported.").
Our review of the issue persuades us that the validity of a mortgage given as a gift should be determined based on the existence of the three elements required to prove a valid inter vivos gift, without reference to a contractual consideration for the conveyance. This is because, assuming intent to give the mortgage is demonstrated, "an enforceable mortgage requires only two things, `(1) an executed conveyance and (2) a condition on the conveyance  an agreement between the parties to defeat the conveyance upon some future act usually of the mortgagor.'" 29 New Jersey Practice, supra, § 32, at 106 & n. 42 (quoting Clapp, Consideration is Not Necessary for a Mortgage, 58 N.J.L.J. 145, 148 (1935), and relying on Judge Clapp's analysis that "a mortgage is an executed conveyance" with an "executing conditional limitation on the fee").
In the instant matter, the conveyance was complete upon Cutler's delivery of the mortgage in recordable form, subject to defeasance upon Cutler paying the underlying obligation of $150,000 from the proceeds of sale or demonstrating there was insufficient equity in the property to pay Jennings from the sale. Under the terms of the mortgage, Cutler had no personal liability to Jennings to pay the $150,000. Consequently, had the property sold for less than any outstanding superior liens, Jennings would not have received anything. The record reflects that what Jennings obtained as a gift was a present interest in real property subject to defeasance when the property was sold. The fact that Jennings may never have received the $150,000 secured by the *566 mortgage because the property may not have been sold, or if sold, may not have generated sufficient proceeds to pay off the mortgage, does not invalidate the gift although it may have disappointed Jennings' expectations.[2]
Finally, we note the trial judge relied on Basse v. Raab, supra, 138 N.J. Eq. at 433, 46 A.2d 787, where our highest court held that a gift of an assignment of an existing mortgage given by the mortgagor to a third party upon advice of counsel was valid because "there was an intent to make a gift[,] ... actual delivery of the subject matter of the gift, and a relinquishment by the donor of all dominion over it." Since the factual predicate for that holding is unclear and the court in Basse did not expressly hold that consideration is not required for a mortgage to be the subject of an inter vivos gift, we are reluctant to base our decision solely on Basse.
However, to the extent Basse can be so interpreted, we rely upon it and here expressly hold that a mortgage given as a gift (ergo without consideration) is enforceable where donative intent is shown and the mortgage is executed in recordable form by the mortgagor and delivered to the mortgagee, thus evidencing an irrevocable relinquishment of the mortgagor's dominion and control over the mortgage, subject, of course, to his or her right to obtain its release in accordance with the terms of the mortgage.[3]

II.
The note contained a provision requiring payment of reasonable attorney fees in the event of default. The judge denied *567 plaintiff's request for attorney's fees finding that Jennings had an opportunity to present proof of the services rendered and the reasonableness of their value during trial but failed to do so. He rejected Jennings' counsel's request at the close of trial for permission to file an affidavit of services after defense counsel opposed the request.
We note that a claim for attorney's fees pursuant to a contractual provision is not "the award of counsel fees under R. 4:42-9," but instead is an element of damages, which ordinarily must be proved "in the same manner as ... any other item of damages." Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206, 216, 206 A.2d 585 (App.Div.), aff'd, 44 N.J. 450, 210 A.2d 73 (1965). There, our Supreme Court observed that plenary proof of the reasonableness of the services rendered may not be required where:
the proceeding before the trial court dealt mainly with other substantive issues and only incidentally with the matter of counsel fee, an affidavit of services had been filed by the attorney for the plaintiffs, ... the attorney for the defendants-appellants voiced no objection to this procedure[,] ... [and] the affidavit of services[] is sufficiently complete to enable [the trial court] to reach a fair determination as to the extent of the legal services rendered and the reasonable value to be paid pursuant to the contractual provision.
[Cohen v. Fair Lawn Dairies, Inc., supra, 44 N.J. at 452, 210 A.2d 73.]
Although we recognize the instant proceeding focused mainly on the substantive issues concerning the validity of the mortgage as a gift with only incidental reference to the attorneys fees Jennings paid to prosecute the action, nevertheless, the record indicates Jennings did not meet the requirements of Cohen. Thus, the trial judge did not err in excluding attorney's fees as part of damages, nor did the judge abuse his discretion in declining to reopen the record to permit the admission of further proofs.
Affirmed.
NOTES
[1] The title company was dismissed from the case following entry of an order directing it to place the escrowed funds with the Clerk of the Court. That order is not the subject of this appeal.
[2] The fact that Cutler was able somehow to prevent the title company from paying Jennings from the proceeds of sale is irrelevant to our view of the gift as completed.
[3] We note, however, a gift of a mortgage compliant with the requisite elements nevertheless may not be enforceable if the transaction is a sham. See 29 New Jersey Practice, supra, § 32, at 106 n. 41) (criticizing Risley v. Parker, 50 N.J. Eq. 284, 23 A. 424 (Ch. 1892) for approving a mortgage gift although a sham transaction).