# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edwin E. Kitzmiller, III and       :
Danielle K. Kitzmiller       :
      :
      v.       :     No. 1187 C.D. 2023
      :
James Halkias and Lycoming       :
County Tax Claim Bureau       :
      :
Appeal of: James Halkias       :     Submitted: November 7, 2024


BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge[1]
               HONORABLE MATTHEW S. WOLF, Judge


OPINION BY JUDGE WOLF             FILED: January 10, 2025


       James Halkias (Halkias) appeals from the April 10, 2023 Opinion and Order of the Court of Common Pleas of Lycoming County (trial court). The trial court dismissed the objections of Edwin E. Kitzmiller, III, and Danielle K. Kitzmiller (the Kitzmillers) to a tax sale of property at which Halkias was the successful bidder, but also granted a judgment in quiet title in favor of the Kitzmillers and against Halkias with respect to the subject property. We affirm.

---

[1] The Court reached the decision in this case prior to the conclusion of Judge Ceisler's service on the Commonwealth Court.

## I. BACKGROUND[2]

This appeal concerns the 115.41-acre property known as 5742 Moreland Baptist Road, Jordan Township, Lycoming County, Pennsylvania, Lycoming County Tax Parcel Number 23-277-130 (Property). Trial Ct. Op., Finding of Fact No. 2 (FF __). The Property was subject to two different public sales —an upset tax sale for unpaid property taxes, and a sheriff's sale for execution on a mortgage. Those sales gave rise to this dispute.

The Property was conveyed by deed dated March 4, 2013, to Melvin E. Swisher, Jr., and Melvin Ammon Swisher (the Swishers). *Id.*, FF 3. The 2013 deed, in combination with a 2011 corrective deed, reserved the oil, gas, and minerals of the Property (Subsurface Rights) to Melvin E. Swisher, Jr., with Marylee H. Swisher reserving a right to royalties. *Id.*, FF 4.

In June 2014, the Swishers granted a mortgage for $766,000 on the Property (Mortgage), which was assigned to Summitbridge National Investments, VI, LLC (Summitbridge) in 2018. *Id.*, FF 5. The Mortgage included a reservation exempting the Subsurface Rights from the lien of the Mortgage. *Id.* On August 16, 2019, Summitbridge filed in the trial court a complaint in confession of judgment against the Swishers, as authorized by the terms of the loan secured by the Mortgage. *Id.*, FF 6. The trial court prothonotary entered a writ of execution directing the Sheriff of Lycoming County (Sheriff) to sell the Property to satisfy the confessed judgment. *Id.* FF 7. The writ of execution included a description of the Property

---

[2] The factual background is based on the trial court's findings of fact set forth in its opinion. *See* Trial Ct. Op. & Order filed April 10, 2023, Reproduced Record (R.R.) at 467-74 (Trial Ct. Op.).

Because the Reproduced Record is not paginated as required by Pa.R.A.P. 2173, we refer to its contents by electronic PDF pagination.

that, like the Mortgage, excluded the Subsurface Rights. *Id.* A sheriff's sale based on the writ (Sheriff's Sale) was originally scheduled for May 1, 2020, but was twice postponed due to the COVID-19 pandemic, first to August 7, 2020, and then to November 6, 2020. *Id.*, FF 8.

Meanwhile, the Lycoming County Tax Claim Bureau (Bureau, and together with the Kitzmillers, Appellees) scheduled an upset tax sale of the Property to recover unpaid property taxes for 2016-2018, as authorized by Article VI(a) of the Real Estate Tax Sale Law (RETSL).[3] The upset tax sale occurred September 16, 2020 (Tax Sale). Trial Ct. Op., FF 9. Halkias was the highest bidder and paid to the Bureau the sale price of $29,742.68.[4] *Id.* The Bureau has held the proceeds from the Tax Sale in escrow pending this litigation and has not applied them to any taxes due on the Property. *Id.*

Before the Tax Sale could be finalized and the Property conveyed to Halkias, the Sheriff's Sale occurred on November 6, 2020. *Id.*, FF 11. Halkias had filed a motion to postpone the Sheriff's Sale, but the trial court denied that motion. Trial Ct. Op. at 8. Halkias attended the Sheriff's Sale but did not bid. *Id.*, FF 11. The Kitzmillers were the highest bidder and they paid the Sheriff the sale price of $545,430. *Id.* That price included all past-due taxes on the Property. *Id.* The Bureau accepted the tax-related portion of the sale price from the Sheriff and applied those funds to the past-due taxes. *Id.* No petition to set aside the Sheriff's Sale was timely filed by any party. *Id.* at 8.

On November 16, 2020, the Bureau filed a consolidated return of the Tax Sale and requested entry of a decree nisi. Trial Ct. Op., FF 14. On November

---

[3] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.601-.609.

[4] This includes the bid price of $21,049.79 plus realty transfer taxes and recording fees. Trial Ct. Op. at 1.

24, 2020, the trial court entered a decree nisi regarding the Tax Sale. *Id.* On November 30, 2020, the Sheriff conveyed the Property by deed to the Kitzmillers as successful bidders at the Sheriff's Sale, containing the same description of the Property as in the 2013 deed and the Mortgage, and including the same reservation of Subsurface Rights. *Id.* at 12. The Kitzmillers have had possession of the Property since that date and have constructed improvements thereon. *Id.*, FF 13.

On December 10, 2020, after publication of the notice of the decree nisi confirming the Tax Sale, the Kitzmillers filed a "Petition for Intervention and Objection to Upset Tax Sale" (Petition) in the trial court. R.R. at 8-19. The trial court stayed all proceedings regarding the Property pending the Petition and directed Halkias and the Bureau to file responses. On June 17, 2021, the Kitzmillers filed a complaint to quiet title with respect to the Property, naming Halkias and the Bureau as defendants. *Id.* at 55-68. Halkias filed an answer and counterclaim. *Id.* at 91-97. Halkias's counterclaim sought ejectment against the Kitzmillers and sought a fee simple deed to the Property from the Bureau. *Id.* at 93-94, ¶¶ 65, 73-74. The parties' filings name as parties Halkias, the Bureau, and the Kitzmillers; none names the Swishers. The parties stipulated that the Bureau would not issue a deed to Halkias until after the trial court adjudicated the Petition and related claims. *Id.* at 418-19, ¶ 22 (joint stipulation of fact). The parties also conceded that the Tax Sale had been conducted in compliance with Pennsylvania law. Trial Ct. Op., FF 10; *see* Notes of Testimony from March 23, 2023 proceeding (N.T.) at 52-53, R.R. at 165-66.

The trial court consolidated the Petition with the quiet title and ejectment claims and held a nonjury trial on March 23, 2023. Halkias, the Kitzmillers, and a Bureau representative testified, but no material facts were disputed at trial. Trial Ct. Op. at 3. On April 10, 2023, the trial court filed its Opinion

4

and Order. The trial court ordered three distinct things, reasoning in support thereof as follows:

> First, the trial court dismissed the Kitzmillers' Petition that sought to set aside the Tax Sale. It reasoned that the Kitzmillers lacked standing and also failed to meet their burden to set aside the Tax Sale. Relevantly, the trial court stated:

> The Court made a confirmation nisi of the consolidated return of the Tax Sale of the Premises on November 24, 2020. Since [the Kitzmillers] did not have any interest in the Premises until the Sherriff's sale on November 30, 2020, they were not owners of the [P]roperty at the time of the Tax Sale . . . . Since this Court has concluded that the interest in the [Property] secured by [the Kitzmillers] through the Sheriff['s] Sale is unaffected by the Tax Sale, they have no legal basis for intervention [under the Pennsylvania Rules of Civil Procedure].

> . . . The question of whether the Tax Sale should have been conducted is moot. It is undisputed that the Tax Sale was conducted, undisputed that Halkias was the successful bidder, and undisputed that the lien of the [] Mortgage was unaffected by the Tax Sale. Since all parties have stipulated that the Tax Sale was conducted pursuant to applicable Pennsylvania law, there is no basis upon which to overturn that sale. *Appeal of Yardley*, 166 A.2d 751[ (Pa. Cmwlth. 1994)].

Trial Ct. Op. at 6-7. Second, the trial court granted judgment in quiet title in favor of the Kitzmillers and against Halkias, and relatedly it denied Halkias's counterclaim in ejectment. The trial court reasoned, in relevant part:

> Tax upset sales convey title to property "under and subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price." [Section 609 of RETSL,] 72 P.S. § 5860.609. . . . It is [] "folly" of a party to purchase property at a tax [upset] sale despite constructive notice of the commencement of a mortgage foreclosure

5

action. *Fin. Freedom, SFC v. Cooper*, 21 A.3d 1229,1232 (Pa. Super. 2011).

> The Writ of Execution describing the [Property] was filed on January 17, 2020 — nine months prior to the tax upset sale . . . . Since a tax sale does not divest junior liens, the [Property] remained subject to the [] Mortgage, the lien of the Judgment by Confession, and the lien of the Writ of Execution. Whatever title to the [Property] might have passed as a result of the Tax Sale, that title was subject to those liens.

> . . . .

> No timely petition to set aside [the Sheriff's Sale] was filed, and the Sheriff issued a deed pursuant to Pa.R.C[iv].P. 3135. Upon filing of that deed, the Court is divested of authority to set aside the sale (absent fraud or lack of authority) . . . . Kitzmiller is [sic] conclusively the owner of the surface rights to the Premises, free and clear of any claim by any third party, with notice, including Halkias.

> Halkias argues that the title passed by the Sheriff's Sale was somehow "hollow" as a result of the Tax Sale. The Court finds that argument to be without merit. In . . . *Community Bank & Trust v. Marjer, Inc.*, 09 CV 8822, No. 09 CV 6676, 2011 Pa. D.&C., Dec. LEXIS 610, June 1, 2011, the court relied upon [Section 609 of RETSL,] 72 P.S. § 5860.609, and held that a deed issued by the Lackawanna County Tax Claim Bureau as a result of a private tax sale was under and subject to an existing mortgage, and that a sheriff's sale on that mortgage would divest the private tax sale purchaser . . . .

Trial Ct. Op. at 8-9.

Finally, the trial court addressed the Subsurface Rights. It noted the Kitzmillers' concession that the description of the Property subject to the Mortgage, and thus subject to the Sheriff's Sale, excluded the Subsurface Rights, so the Kitzmillers have no claim to them. *Id.* at 9. The trial court then reasoned that since

6

the Tax Sale was not overturned and was not limited to exclude the Subsurface Rights, the Bureau retains an interest in the Subsurface Rights, which should be conveyed to Halkias as the successful bidder. *Id.* at 9-10. The trial court noted that the price Halkias paid at the Tax Sale was for the tax assessed on the surface of the Property, and the Bureau did not separately assess the Subsurface Rights. The trial court also observed that the Swishers (who held the Subsurface Rights before the Tax Sale) would be an indispensable party to any dispute about Halkias's interest thereto. Accordingly, the trial court ordered as follows regarding the Subsurface Rights:

> 4. The [] Bureau is directed to deliver a non-warranty deed to [] Halkias, limited to whatever Subsurface interest may remain with that Bureau in [the Property]. The form and content of that deed will be determined by the [] Bureau, consistent with applicable law . . . .
>
> 5. Since the funds paid by [the Kitzmillers] to the Sheriff [] included all past due taxes on [the Property], the Tax Sale funds held in escrow by the [] Bureau should be refunded to [] Halkias . . . .
>
> 6. To the extent that any party seeks a judicial determination as to whether the Tax [] Sale . . . conferred any interest in [the Property] beyond the interest which was the subject of the Sheriff deed to [the Kitzmillers], all such claims are dismissed pursuant to Pa.R.C[iv].P 1032(b), for failure to join a necessary party.

Trial Ct. Op. at 12-13. Halkias filed a notice of appeal with the Superior Court, which transferred the appeal to this Court. Halkias then filed post-trial motions *nunc pro tunc*, which the trial court accepted and ultimately denied.[5]

---

[5] By Memorandum and Order issued January 24, 2024, this Court denied the Kitzmillers' application to quash this appeal for failure to file post-trial motions, noting that Halkias had filed them *nunc pro tunc* in the trial court.

7

## II. ISSUES

On appeal,[6] Halkias raises 13 alleged errors of law by the trial court, which we consolidate and reorganize into essentially three issues, as follows. First, Halkias argues that because the Property passed to the Bureau by operation of the Tax Sale, the Sheriff's Sale did not convey—and the Sheriff could not convey—the property to the Kitzmillers. Second, based on that view, Halkias argues the trial court erred in failing to grant ejectment in his favor and against the Kitzmillers, since the Bureau holds superior title to the Property and is obligated to convey that title to Halkias as the successful bidder at the Tax Sale. Third, Halkias argues that the Kitzmillers' quiet title action was barred by the stay of proceedings imposed by the trial court and by the doctrine of sovereign immunity.

The Kitzmillers largely argue in opposition to Halkias's arguments, but they also raise two issues of their own. First, they challenge the trial court's determination that they lacked standing to file the Petition challenging the Tax Sale. Second, they argue the trial court erred in failing to set aside the Tax Sale, because the Sheriff's Sale extinguished any interest that could be conveyed by the Tax Sale.

The Bureau asks that the Court affirm the trial court and does not raise any claims of error. The portions of the trial court's order relating to the Subsurface Rights and ordering the Bureau to prepare a deed therefor "[are] not the subject of this appeal" because no party has challenged that portion of the trial court's order. Kitzmillers' Br. at 30-31.

---

[6] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Shipley v. Tax Claim Bureau of Delaware Cnty.*, 74 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2013) (quoting *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 181 n.6 (Pa. Cmwlth. 1999)).

8

## III.  DISCUSSION

### A.  Effect of Tax Sale on Sheriff's Sale

We first consider Halkias's argument that the Tax Sale conveyed superior title to him, making the Sheriff's Sale insufficient to convey the Property to the Kitzmillers.   He explains that, in his view, the Tax Sale moved title to the Bureau, leaving the Swishers with an "equitable reversionary title," so the Sheriff's Sale can only have conveyed that lesser title, not the Bureau's title, to the Kitzmillers. Halkias's Br. at 8.  In support, he points out that a first sheriff's sale of a property renders a second sheriff's sale ineffective because the first sale divests all liens. *Id.* at 19 (citing *CSS Corp. v. Sheriff of Chester Cnty.*, 507 A.2d 870, 872 (Pa. Super. 1986)).  Halkias reasons that the title he acquired at the Tax Sale cannot have been divested by the Sheriff's Sale on the lien of the Mortgage, since sheriff's sales divest only junior liens, not senior liens, and his interest obtained at the Tax Sale represents a senior lien.  He argues that when the Tax Sale was confirmed nisi and objections were denied without appeal, he gained equitable title to the Property, rendering the Sheriff powerless to sell the Property at the Sheriff's Sale.  Relatedly, Halkias argues that the trial court's December 10, 2020 stay order prohibited the Sheriff's payment of, and the Bureau's acceptance of, back taxes with proceeds from the Sheriff's Sale.

The Kitzmillers and the Bureau distinguish the case on which Halkias relies because Section 609 of RETSL, 72 P.S. § 5860.609, specifically provides for the nondivestiture of senior liens.  They argue that Halkias's purchase at the Tax Sale was "his folly" because he knew of the Mortgage and proceeding to collect on it, and is presumed to know the law—that Section 609 of RETSL would allow the Mortgage to remain a priority lien on the Property and cloud his title.  Kitzmillers'

9

Br. at 15 (quoting *Financial Freedom*, 21 A.3d at 1232). In support, the Kitzmillers note that Halkias had not only constructive notice of the recorded Mortgage, but also had actual and formal notice of the Sheriff's Sale, including notices which Summitbridge gave gratuitously[7] to Halkias when the Sheriff's Sale was rescheduled numerous times. Thus, they argue, the Mortgage survived the Tax Sale, and Halkias took title subject to the Mortgage and subject to the Sheriff's Sale divesting him of title in order to execute on the Mortgage.

We agree with the Kitzmillers and the Bureau that Section 609 of RETSL controls this issue. It provides:

> Every [upset tax sale held under Article VI(a) of RETSL)] shall convey title to the property under and subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price with which said property may have or shall become charged or for which it may become liable.

72 P.S. § 5860.609. This provision means that "a 'tax upset sale,' . . . unlike a judicial tax sale, does not discharge mortgages." *First Fed. Sav. & Loan Ass'n of Lancaster v. Swift*, 321 A.2d 895, 897 (Pa. 1974); *see Pitti v. Pocono Bus. Furniture, Inc.*, 859 A.2d 523, 528 (Pa. Cmwlth. 2004). We have applied Section 609 of RETSL to resolve a conflict between an initial upset tax sale and a subsequent attempt to collect on a mortgage. *Wells Fargo Bank N.A. v. James*, 90 A.3d 813, 816 (Pa. Cmwlth. 2014). There, Wells Fargo Bank initiated a mortgage foreclosure action on a property, and subsequently—but before a sale on the mortgage occurred—Land Tycoon, Inc. purchased the property at an upset tax sale. Our

---

[7] The trial court's rescheduling orders specifically stated that no additional notices of the Sheriff's Sale would be required.

10

holding addressed the right of Land Tycoon to intervene in the mortgage foreclosure action, but we also stated:

> Land Tycoon has an interest in the [p]roperty that will be bound by the foreclosure action because it has title to the [p]roperty. Section 609 of [RETSL], 72 P.S. § 5860.609; *see also Pitti,* 859 A.2d at 527 n. 5 ("[A]n upset tax sale will convey title subject to all recorded liens and mortgages[.]"). Wells Fargo's foreclosure action, if successful, *will operate to extinguish Land Tycoon's title and transfer title to Wells Fargo.*

*Id.* at 816 (emphasis added) (footnote omitted).

What we imagined could occur in *Wells Fargo Bank* has in fact occurred here. The Mortgage was recorded, it was not divested at the Tax Sale, it was subsequently executed via Sheriff's Sale, and execution on the Mortgage divested the tax sale purchaser (here, Halkias) of title. The only difference is that here it is the Kitzmillers, rather than the mortgagee Summitbridge, who have taken title pursuant to the Mortgage and Sheriff's Sale. To accept Halkias's argument to the contrary would require us to ignore Section 609 of RETSL and assume the Tax Sale divested the lien of the Mortgage. *CSS Corp.*, 507 A.2d at 872, which Halkias cites, is readily distinguishable because that case dealt with two competing sheriff's sales. It did not involve an upset tax sale and thus did not implicate Section 609 of RETSL, which is dispositive here.

Further, we do not agree that the trial court's December 10, 2020 order prohibited the Sheriff or the Bureau from applying the proceeds of the Sheriff's Sale to pay the delinquent taxes. That order stayed "all proceedings concerning the [Property]." R.R. at 28. The Sheriff's and the Bureau's exercise of their statutory duty to apply the proceeds toward delinquent taxes is not a "proceeding" that was subject to the trial court's order.

For these reasons, we conclude that the trial court did not err in holding that the Tax Sale did not divest the lien of the Mortgage, and that the Sheriff's Sale thus divested the Bureau and Halkias of interest in the Property.

## B. The Kitzmillers' Objection Petition

We turn next to the Kitzmillers' challenges to the trial court's dismissal of their Petition challenging the Tax Sale. First, regarding standing to object, "objections or exceptions [to an upset tax sale] may be filed *by any owner or lien creditor* within thirty (30) days after the court has made a confirmation nisi." Section 607(b) of RETSL, 72 P.S. § 5860.607(b). Thus, "[t]he legislature in [RETSL] specifically limited challenges to tax sales by the Bureau to owners or lien creditors of the real estate, and then limited them only to filing objections or exceptions to the 'regularity or legality of the proceedings of the bureau in respect to such sale.'" *Appeal of Yardley*, 646 A.2d 751, 755 (Pa. Cmwlth. 1994) (quoting Section 607(d) of RETSL, 72 P.S. § 5860.607(d)). "[O]ne who is neither an 'owner' nor a lienholder *on the date of the tax sale* cannot" file objections to the tax sale. *CR 2018 LLC v. Columbia Cnty. Tax Claim Bureau*, 229 A.3d 398, 403 (Pa. Cmwlth. 2020) (emphasis added) (quoting *Petition of Crouthamel*, 412 A.2d 645, 647 (Pa. Cmwlth. 1980)). The Kitzmillers were neither owners nor lienholders of the Property on the date of the Tax Sale, so the trial court did not err in dismissing their Petition.[8]

Second, the Kitzmillers argue the trial court erred in failing to set aside the Tax Sale, because the Sheriff's Sale extinguished any interest that could be

---

[8] Even if the Kitzmillers had an ownership interest sufficient to allow them to object to the Tax Sale, they have abandoned that interest. They acknowledge they did not raise any post-decision challenge in the trial court "concerning the dismissal of their [Petition]." Kitzmillers' Br. at 12. Below, they conceded the regularity and legality of the Tax Sale. Trial Ct. Op., FF 10; N.T. at 52-53, R.R. at 165-66. Since that is the only potential basis for an objection under Section 607(d) of RETSL, 72 P.S. § 5860.607(d), the Kitzmillers have acknowledged that they lack a basis for objecting to the Tax Sale.

conveyed by the Tax Sale. *See* Kitzmillers' Br. at 27. They ask this Court to reverse the trial court on that point and require the Tax Sale to be set aside (which the trial court did not do, even though it awarded possession to the Kitzmillers). But we must reject that argument because it is based on a fundamental misunderstanding of tax sale procedure. Even if the Appellees are correct that the Sheriff's Sale extinguished any interest Halkias obtained through the Tax Sale, setting aside the Tax Sale is not the proper remedy. As Section 607(d) of RETSL makes clear, the only bases for objecting to and setting aside a tax sale are irregularity or illegality of the tax sale itself. Instead of setting aside the Tax Sale, the proper remedy is to recognize the superiority of the title created in or conveyed to another in the subsequent sheriff's sale, and to award possession of the property on that basis. That is what the trial court did by granting quiet title judgment in favor of the Kitzmillers and denying Halkias's ejectment claim. We turn now to Halkias's challenge to that remedy.

### C. Halkias's Ejectment Claim & the Quiet Title Claims

Halkias argues the trial court erred in granting the Kitzmillers' quiet title claims, for two reasons. He first asserts that the trial court's December 10, 2020 stay order should have prohibited the Kitzmillers from filing a quiet title action. This argument misunderstands the nature of the order: it specifically "stayed" all proceedings concerning the Property, but it did not forbid the filing of new proceedings concerning the Property. R.R. at 28. Further, the trial court affirmatively consolidated the Kitzmillers' quiet title action with the action it had stayed, and that was pursuant to stipulation of the parties, including Halkias. *Id.* at 52. The trial court was free to modify its stay order to allow for its consideration of newly filed proceedings, which is what its consolidation order did. We thus reject

13

Halkias's argument that the trial court should have dismissed the quiet title action as violative of the stay order.

Next, Halkias invokes sovereign immunity, arguing that because the Bureau, a local governmental entity, held title after the Tax Sale occurred, the Sheriff could not acquire title from the Bureau in order to convey it to the Kitzmillers via the Sheriff's Sale. Halkias's Br. At 19. However, the Bureau does not enjoy sovereign immunity because it is not the Commonwealth or a Commonwealth agency. *Snead v. Soc'y for Prevention of Cruelty to Animals of Pa.*, 985 A.2d 909, 913 (Pa. 2009). As a local agency, the Bureau does enjoy governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541-42, "which provides, with certain exceptions, 'no local agency shall be liable *for any damages* on account of any injury to a person or property.'" *Snead*, 985 A.2d at 913 (quoting 42 Pa.C.S. § 8541) (emphasis added). But that provision's purpose is "to limit the government's liability for its tortious acts," so it does not prohibit the Bureau from being named in a quiet title action. *Id.* A quiet title action does not seek damages in tort but rather seeks title and possession of real property. We reject Halkias's argument that the trial court should have dismissed the Kitzmillers' quiet title action on sovereign immunity grounds.

Finally, Halkias argues that the trial court erred in failing to grant him ejectment against the Kitzmillers because the trial court did not disturb the Tax Sale, at which Halkias was the successful bidder. This argument fails for the reasons we have explained above. The trial court did not need to invalidate or disturb the Tax Sale in order to conclude that the Kitzmillers, rather than Halkias, are entitled to possession of the Property. That conclusion flows from the fact that the Tax Sale, though valid, did not divest the Mortgage and Halkias's interest in the Property

14

remained subject to the Mortgage. Accordingly, the interest the Kitzmillers obtained in the Property, which was pursuant to the Mortgage via the Sheriff's Sale, was superior to Halkias's interest. That precluded the trial court from entering a judgment in ejectment against the Kitzmillers and required judgment in quiet title for them, since they proved they have superior title and the right of possession. *See Hoffman v. Bozitsko*, 182 A.2d 113, 115 (Pa. Super. 1962).

## IV. CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in dismissing the Kitzmillers' objections to the Tax Sale and in granting judgment in quiet title in favor of the Kitzmillers and against Halkias with respect to the Property.

 

 

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edwin E. Kitzmiller, III and   :
Danielle K. Kitzmiller   :
   :
v.   :   No. 1187 C.D. 2023
   :
James Halkias and Lycoming   :
County Tax Claim Bureau   :
   :
Appeal of: James Halkias   :


# O R D E R


AND NOW, this 10th day of January 2025, the April 10, 2023 Opinion and Order of the Court of Common Pleas of Lycoming County is AFFIRMED.


_____
MATTHEW S. WOLF, Judge